No. 85-466

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

GREGORY D. OSTERMILLER,

       Plaintiff and Appellant,

   -vs-

MICHAEL ALVORD,

       Defendant and Respondent.

_____

APPEAL FROM:  District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable LeRoy McKinnon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Nash, Wellcome, Frost, Guenther & Zimmer; Page
Wellcome, Bozeman, Montana

    For Respondent:

        Poore, Roth & Robinson; Douglas A. Buxbaum, Butte,
Montana

_____

Submitted on Briefs:  May 9, 1986

Decided:  June 25, 1986

Filed:   JUN 2 5 1986

_____
               Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiff Gregory Ostermiller appeals in this dental malpractice action. The District Court for Gallatin County entered a judgment on a jury verdict for defendant. We affirm.

The issues are:

1. Was it error for the court to allow defense counsel to communicate with a treating physician of the plaintiff during trial, without the plaintiff's consent?

2. Did the court err by allowing certain expert testimony and by allowing Dr. Black to testify?

3. Was the jury's verdict supported by substantial credible evidence?

Plaintiff first visited defendant, a dentist, in December 1981 to have a wisdom tooth pulled. He had five additional appointments with defendant between December 1981 and April 1982. On April 13, 1982, defendant pulled two more of plaintiff's wisdom teeth. Prior to the extraction, defendant discussed with plaintiff the possibility of bleeding, swelling, and discomfort, but he did not discuss the possibility of a serious post-extraction infection. Defendant instructed plaintiff to call him at any time if there were problems following the extraction.

Three days after the extraction, plaintiff went to defendant's office complaining of severe pain and swelling on the left side of his face. Following an examination, defendant prescribed a broad-spectrum antibiotic to combat any infection that might be present. However, the swelling and pain did not go away. Plaintiff saw defendant again on the 19th to have his stitches removed, but no additional treat-

2

ment was given because defendant believed that the infection was diminishing.

By the next night, plaintiff's pain and swelling had become so intense that he had to be driven to the hospital, and defendant was immediately called there. After examining plaintiff, defendant concluded that plaintiff was experiencing serious post-extraction infection, and called in Dr. Stephen Black, an oral and maxillofacial surgeon. Dr. Black performed two operations on plaintiff to drain the infection, providing temporary relief of the condition. However, plaintiff did not completely recover until March of 1983 when two small bone chips were removed from his cheek at the University of Washington Medical Center.

I

Was it error for the court to allow defense counsel to communicate with a treating physician of the plaintiff during trial, without the plaintiff's consent?

Near the close of plaintiff's case at trial, defendant's counsel asked plaintiff's counsel whether he intended to call Dr. Black, one of plaintiff's treating physicians. This inquiry was made before the court and on the record, but the jury was not present. Although Dr. Black had been deposed and references had been made to his treatment notes during plaintiff's direct examination of defendant, plaintiff answered that he did not intend to call Dr. Black. Defendant's counsel then requested the court's permission to meet with Dr. Black to prepare testimony for use in defendant's case. Plaintiff's counsel objected to any extrajudicial communication between defendant's counsel and Dr. Black, based on Jaap v. District Court of Eighth Judicial Dist. (Mont. 1981), 623 P.2d 1389, 38 St.Rep. 280. The court did not prohibit the interview, which was conducted that evening with plaintiff's

3

counsel present. The next day Dr. Black appeared as a witness for defendant.

Parties to litigation waive any physician-patient privilege as to the mental or physical condition in controversy. Rule 35(b)(2), M.R.Civ.P. However, this Court held in Jaap that a district court does not have the power to order a private interview between counsel and possible adversary witnesses, or to attempt to enforce any method of discovery not provided for by the Montana Rules of Civil Procedure. Jaap, 623 P.2d at 1391-92. The holding in Jaap does not apply here. In this case, defendant's request to meet with Dr. Black was made near the end of plaintiff's case at trial, after plaintiff had said he did not intend to call Dr. Black as a witness. At that point, Dr. Black could not be classed as a possible adversary witness as far as the defendant was concerned. Dr. Black was a treating physician with significant knowledge of the course of treatment of plaintiff. Defendant's counsel had previously listed Dr. Black as a possible witness. The interview by defendant's counsel can better be described as a means of reviewing a witness's testimony than as a means of discovery. Because the witness was not a witness for the plaintiff, and because the inquiry was made during the course of trial, normal discovery limitations as referred to in Jaap did not apply. In response to the defense counsel's invitation, plaintiff's counsel was present during the interview. We conclude that it was not error to allow the interview to take place.

II

Did the court err by allowing certain expert testimony and by allowing Dr. Black to testify?

Plaintiff contends that Dr. Kenck's expert testimony about defendant's general ability to recognize and treat

4

infections and his capability and conscientiousness as a dentist was impermissible character evidence under Rule 404, M.R.Evid. Plaintiff also argues that Dr. Black's testimony should not have been admitted because he was not disclosed as an expert witness in defendant's answers to interrogatories.

A malpractice action necessarily involves the issue of whether the defendant exercised the required skill and care in his treatment of the patient. This is almost always a matter of opinion. Plaintiff's first witness was the defendant, who testified as to the procedures he followed in his treatment of plaintiff, which he stated were his standard procedures. Plaintiff's expert Dr. Morton later testified at length that, in his opinion, defendant failed to obtain a valid informed consent because he failed to mention the possibility of infection, that defendant should have taken x-rays of plaintiff's mouth for evidence of existing infection, that defendant did not provide appropriate home care instructions, and that defendant failed to recognize and respond appropriately to the infection. Dr. Kenck was also called as plaintiff's expert. Plaintiff elicited testimony from Dr. Kenck that he would refer patients with severe post-extraction facial infection to a family physician or to Dr. Black for an intramuscular injection of penicillin. He also testified that he would judge the severity of an infection by the amount of swelling present, and that he examines extraction patients after 24 hours for signs of infection. On cross-examination he testified that he had not examined plaintiff's treatment records. On cross-examination, Dr. Kenck also acknowledged that over the years he had known defendant professionally, he had formed the judgment that defendant is a good, capable, and conscientious dentist; he had never known defendant to be incapable of making a

5

judgment as to whether an infection had progressed to the point that the patient should be referred to a specialist; and he believed defendant was capable of judging the type of antibiotic therapy appropriate for a post-extraction infection.

We do not approve the form of the questions to Dr. Kenck because we recognize that they could be construed as eliciting inadmissible character evidence. However, viewing the three questions to which plaintiff specifically objects in light of all of Dr. Kenck's testimony, we conclude that his answers were properly admitted on cross-examination.

Plaintiff also objects to the admission of Dr. Black's testimony because Dr. Black's name was not listed in the defendant's answers to interrogatories requesting the names of the expert witnesses who would be called at trial. That contention ignores the information actually furnished to the plaintiff. In defendant's May 10, 1984 answer to an interrogatory regarding known witnesses, the defendant advised the plaintiff that Dr. Black was a witness. This was almost 10 months prior to trial. Dr. Black was listed by the defendant as a witness in the pretrial order dated February 20, 1985. Further, Dr. Black was deposed by both parties prior to trial. Dr. Black was a treating physician for the plaintiff and in no way could be classed as a surprise witness. Plaintiff has not contended that he was surprised in any respect by the testimony of Dr. Black. He has only argued that defendant failed to list Dr. Black as an expert witness. We find that such an argument is hyper-technical in view of the information furnished to the plaintiff. We conclude that the admission of Dr. Black's testimony was proper.

6

III

Was the jury's verdict supported by substantial credible evidence?

After the jury rendered its verdict in defendant's favor, plaintiff moved for a new trial based on insufficiency of the evidence. The District Court denied that motion. Plaintiff again argues here that the verdict and judgment entered below are against the weight of the evidence. In support, he refers to Dr. Black's opinion that plaintiff's infection arose as a result of the extraction of the tooth.

The transcript also shows that Dr. Black testified that, in his opinion, defendant exercised the usual degree of skill and judgment in referring patients to specialists. Two dentists called by defendant as experts reviewed the facts and medical record of this case and testified that, in their opinions, defendant was not negligent in his treatment or referral of plaintiff. They testified that in a small percentage of tooth extractions, portions of tooth root break off, and an infection like the one suffered by plaintiff can result. In their opinions, defendant did not negligently omit to do anything which could have prevented this, or do anything to negligently cause it. They also testified that infections such as the one plaintiff suffered are so rare that they should not be routinely discussed with patients as a possible outcome of a tooth extraction, that infections can worsen dramatically in a very short time, and that defendant adequately monitored plaintiff's progress after the extraction. We hold that there is substantial evidence in the record to support the jury's verdict.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices