No. 04-592

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 198

ALAN RAY FAULCONBRIDGE, Individually and as Personal
Representative of the Estate of ELISHA KAY FAULCONBRIDGE
and BERNICE KAY FAULCONBRIDGE,

      Plaintiffs and Appellants,

  v.

STATE OF MONTANA,

      Defendant and Respondent and Cross-Appellant.


APPEAL FROM:    The District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DV 94-79995
                Honorable Douglas G. Harkin, Presiding Judge


COUNSEL OF RECORD:

      For Appellants:

            Monte D. Beck, Esq., Beck Richardson & Amsden, PLLC,
            Bozeman, Montana; Morgan M. Modine, Esq., Modine Law Firm,
            Missoula, Montana; Teresa M. Thompson, Esq., Attorney at Law,
            Missoula, Montana

      For Respondent:

            Hon. Mike McGrath, Montana Attorney General, Kelly M. O'Sullivan,
            Assistant Attorney General, Helena, Montana; Shelton C. Williams, Esq.,
            Williams & Ranney, P.C., Missoula, Montana


                Submitted on Briefs:  August 30, 2005

                    Decided:  August 22,
2006

Filed:

                            Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Elisha Kay Faulconbridge (Elisha) died on August 8, 1992, as a result of injuries she received as a passenger in a motorcycle accident that occurred on Juniper Drive in Missoula County, Montana. Elisha's parents, Alan Ray Faulconbridge and Bernice Kay Faulconbridge (the Faulconbridges), individually and on behalf of Elisha's estate, filed a wrongful death and survivorship action against the State of Montana (State), Missoula County (County), and Montana Rail Link (MRL) in September 1994. The Faulconbridges proceeded to trial in January and February 2004, against the State only. A jury returned a verdict in favor of the State following a ten-day trial. The Faulconbridges appeal. The State cross-appeals in the event this Court grants a new trial. We affirm in part, reverse in part, and remand for a new trial.

¶2 We rephrase and address the following issues the Faulconbridges raise on appeal:

¶3 1) Is the issue of whether the District Court erred in granting the State's motion to quash discovery related to prior incidents at the accident site moot, in light of the State's inadvertent disclosure of this information to the Faulconbridges?

¶4 2) Did the District Court abuse its discretion when it refused to admit evidence of a prior accident that occurred at the same location as Elisha's accident?

¶5 3) Did the District Court abuse its discretion when it refused to allow Ken Kailey to testify as an expert for Plaintiffs, due to the lack of a Rule 26(b)(4), M.R.Civ. P., disclosure when Kailey was not retained in preparation for litigation?

¶6 4) Did the District Court commit error when it permitted retired State employee James Weaver to serve as the State's representative and testify during trial?

¶7 a) May a party's designated trial representative testify as a fact witness after the court has granted a motion to exclude all witnesses pursuant to Rule 615, M.R.Evid?

¶8 b) Is a former employee a proper representative for purposes of Rule 615, M.R.Evid.?

¶9 c) Did the District Court err when it declined to grant the Faulconbridges a new trial based on James Weaver's presence and testimony?

¶10 5) Did the District Court err when it determined that a violation of the Manual of Uniform Traffic Control Devices (MUTCD) did not constitute negligence *per se* and, on that basis, refused the Faulconbridges' proposed jury instructions and denied their motion for a directed verdict?

¶11 The State cross-appeals and raises the following issues:

¶12 6) Did the District Court err when it denied the State's motion for summary judgment?

¶13 7) Did the District Court abuse its discretion when it prevented the State from introducing evidence of Jason Weaver's conduct?

¶14 8) Did the District Court abuse its discretion when it refused to admit evidence of Elisha's alleged comparative negligence?

3

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶15 Fifteen year-old Elisha Faulconbridge rode as a passenger on Jason Weaver's (Jason) motorcycle following her baptism in the Blackfoot River on August 7, 1992. On their way to the Milltown Dam recreation area east of Missoula, the motorcycle failed to negotiate a 90-degree turn to pass under an MRL railroad trestle on Juniper Drive. The motorcycle impacted a cement abutment under the trestle. Elisha was thrown into the cement abutment and died of her injuries the next morning.

¶16 Plaintiffs brought a wrongful death action against the State, MRL and the County in 1994. Plaintiffs did not sue Jason, but settled with him in February 1996. However, MRL brought a third-party action against Jason, and Jason in turn brought counterclaims against MRL and cross-claims against the State and the County. The State brought a cross-complaint against Jason for contribution and indemnity.

¶17 The Faulconbridges settled with the County and MRL. MRL then dismissed its third-party complaint against Jason. Jason in turn dismissed his counterclaim against MRL and his cross-claim against the County. Jason moved to dismiss the State's claim against him on two occasions. Following our Opinion in *Cusenbary v. Mortensen*, 1999 MT 221, 296 Mont. 25, 987 P.2d 351, the State eventually dismissed Jason from the action.[1] Consequently, when the trial began in February 2004, the State remained as the sole Defendant.

---

[1] *Cusenbary* held that a jury cannot apportion negligence to impecunious and judgment-proof third parties whom the plaintiffs have released from liability. *Cusenbary*, ¶ 62.

¶18   The Faulconbridges alleged in their initial complaint that Juniper Drive's dangerous condition caused the accident. They claimed that the road lacked proper signing to warn motorists of the accumulated gravel and the approaching sharp curve.

¶19   In light of the fact that the Faulconbridges had released three parties from liability preceding the trial, the inordinate delay of ten years from the time the Faulconbridges filed suit until trial, and miscellaneous other factors, the trial proved quite complicated. The District Court was faced frequently with issues relative to apportioning liability to third parties not present at trial, as addressed in *Plumb v. Fourth Jud. Dist. Court, Missoula County* (1996), 279 Mont. 363, 927 P.2d 1011.

¶20   There was disputed evidence that Jason consumed alcohol the day of the accident. The State also alleged that Jason was speeding and that his motorcycle had a misaimed headlight. Over the State's objection, the District Court granted the Faulconbridges' motion *in limine* to prevent the State from introducing evidence of Jason's conduct on the day of the accident. The State sought supervisory control, but we denied the application.

¶21   We will address the remaining factual and legal arguments as they arise in the discussion of the issues below.

**STANDARD OF REVIEW**

¶22   We review a district court's evidentiary rulings to determine whether the court abused its discretion. *State v. Southern,* 1999 MT 94, ¶ 48, 294 Mont. 225, ¶ 48, 980 P.2d 3, ¶ 48. We also review a district court's refusal to give proffered jury instructions for an abuse of discretion. *Hartle v. Nelson*, 2000 MT 356, ¶ 12, 303 Mont. 264, ¶ 12, 15 P.3d 484, ¶ 12. A

5

district court abuses its discretion only if it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason. *Howard v. St. James Community Hosp.*, 2006 MT 23, ¶ 16, 331 Mont. 60, ¶ 16, 129 P.3d 126, ¶ 16.

¶23 This Court reviews a district court's decision to deny a new trial for a manifest abuse of discretion. A manifest abuse of discretion is one that is obvious, evident or unmistakable. *McDermott v. Carie, LLC*, 2005 MT 293, ¶ 11, 329 Mont. 295, ¶ 11, 124 P.3d 168, ¶ 11.

¶24 Finally, we review a district court's statutory interpretation as a matter of law to determine whether it is correct. *Reier Broadcasting Co., Inc. v. Kramer*, 2003 MT 165, ¶ 9, 316 Mont. 301, ¶ 9, 72 P.3d 944, ¶ 9.

## ISSUE ONE

¶25 *Is the issue of whether the District Court erred in granting the State's motion to quash discovery related to prior incidents at the accident site moot, in light of the State's inadvertent disclosure of this information to the Faulconbridges*?

¶26 The Faulconbridges claim that Rule 26(b)(1), M.R.Civ.P., entitles them to discover other similar accidents that occurred at the same location as Elisha's accident. They maintain the District Court committed reversible error when it granted the State's motion for protective order that protected this information. The State claims the issue is moot because although the District Court granted the State's motion for protective order, the Faulconbridges nevertheless received the requested information regarding prior accidents when the State's record keeper answered interrogatories that requested this information.

¶27 This Court considers a matter moot when, due to an event or happening, the issue has ceased to exist and no longer presents an actual controversy. *Shamrock Motors, Inc. v. Ford*

*Motor Co.* 1999 MT 21, ¶ 19, 293 Mont. 188, ¶ 19, 974 P.2d 1150, ¶ 19. The State inadvertently provided the Plaintiffs with the precise information the District Court's order would have precluded them from receiving. The Faulconbridges received all pertinent information regarding a 1986 accident that occurred at the same place as Elisha's accident. Consequently, because a controversy no longer exists, we will not consider this issue on appeal. *Lewistown Propane Co. v. Moncur*, 2002 MT 349, ¶ 14, 313 Mont. 368, ¶ 14, 61 P.3d 780, ¶ 14.

## ISSUE TWO

¶28     *Did the District Court abuse its discretion when it refused to admit evidence of a prior accident that occurred at the same location as Elisha's accident*?

¶29     The Faulconbridges claim the District Court abused its discretion when it prevented them from calling a driver and passenger to testify about an accident they had in 1986 at the same location as Elisha's accident. The Faulconbridges assert that the 1986 accident was sufficiently similar to the accident at issue so as to demonstrate notice of the alleged defect on the part of the State, as well as causation and the dangerous and defective nature of the road. The State maintains that the District Court properly denied the evidence because the "substantially similar" requirements are not met. It also asserts that Rule 403, M.R.Evid., considerations render evidence of the 1986 accident inadmissible.

¶30     Evidence of other accidents is not admissible to show negligence. *Kissock v. Butte Convalescent Center*, 1999 MT 322, ¶ 15, 297 Mont. 307, ¶ 15, 992 P.2d 1271, ¶ 15. Such evidence may be admitted, however, to show the existence of a danger or defect and notice or

7

knowledge thereof. *Kissock*, ¶ 15. In addition, this Court requires that the prior accident be "substantially similar to" and "not too remote from the accident in question" to qualify for admission. *Kissock*; ¶ 16, *Runkle v. Burlington Northern* (1980), 188 Mont. 286, 292, 613 P.2d 982, 986. Even so, "[a]ccidents need not be identical to be admissible." *Tacke v. Vermeer Mfg. Co.* (1986), 220 Mont. 1, 9, 713 P.2d 527, 532.

¶31 We have said that the "substantially similar" requirements are "relaxed" when a party offers evidence of prior accidents for the sole purpose of demonstrating notice or knowledge. *Kissock*, ¶ 17. In *Kissock*, we reasoned that in situations where the "substantially similar" requirements are relaxed, the differences between the accidents "can easily be brought out on cross-examination and understood by the jury. Such differences are said to affect the 'weight' of the evidence but not necessarily its admissibility." *Kissock*, ¶ 18.

¶32 This Court has on several occasions analyzed evidence of prior accidents and concluded such evidence is admissible. For example, in *Kissock*, we reversed a district court's decision to disallow evidence of a slip and fall accident that occurred a few days prior to the plaintiff's accident in the same parking lot. *Kissock*, ¶¶ 21-24. We concluded that the jury should have been able to hear evidence of the prior accident for the purpose of determining whether a reasonably prudent defendant, having notice of a prior accident, might have taken precautions against future accidents. *Kissock*, ¶ 22.

¶33 In *Kalanick v. Burlington Northern R. Co.* (1990), 242 Mont. 45, 788 P.2d 901, the plaintiff was injured while moving railroad ties at work. He sought to introduce evidence that another Burlington Northern employee had previously sustained an injury while moving

8

railroad ties. We concluded that the district court properly admitted evidence of the prior incident to show danger or defect, even though the prior injury occurred six years before plaintiff's injury, took place in a different location, and involved a larger railroad tie. *Kalanick*, 242 Mont. at 52, 788 P.2d at 906.

¶34    Finally, in *Tacke*, the plaintiff sought damages from a hay baler manufacturer for injuries he sustained while baling barley straw. We reversed the district court's decision to narrowly limit evidence of other accidents to only those that involved the same model hay baler and similar instances of operator error. In determining that the district court abused its discretion, we reasoned that the court's limitation "denied plaintiff the opportunity to present relevant evidence on the notice defendant had as to accidents . . . ." *Tacke*, 220 Mont. at 9, 713 P.2d at 532. The holdings in these cases follow the general principle that courts should "admit the evidence unless some good reason exists to exclude it." Commission Comments to Rule 102, M.R.Evid.

¶35    The State relies upon Rule 403, M.R.Evid., to support its contention that the District Court properly denied evidence of the 1986 accident. The State first claims that the District Court's decision to prevent it from introducing evidence of Jason's conduct on the day of the accident highlights the prejudicial effect that admitting evidence of the prior accident would have, because the State would be left without the ability to explain the dissimilarities between the 1986 accident and the accident at issue. Our discussion at ¶¶ 95-99 below, however, remedies this purported inequity.

9

¶36 The State also argues that the circumstances surrounding the accidents do not meet the "substantially similar" factors this Court requires. The State points out that one accident involved a vehicle and the other a motorcycle, the events occurred at different times of the day, and a sign was present in Elisha's accident but not in the 1986 accident.

¶37 The record shows that the 1986 accident occurred at the precise location as the accident at issue. The police reports from both accidents referred to lack of warning signs. The drivers in both accidents were unfamiliar with the road, and the Faulconbridges' offer of proof demonstrated that the vehicles were both traveling approximately 35-40 miles per hour. Finally, the road surface had not changed in six years and consisted of sand and gravel on top of pavement at the time of both accidents. Thus, the circumstances surrounding the 1986 accident and those in the present case are far more similar than they are different.

¶38 We conclude the District Court abused it discretion in excluding evidence of the 1986 accident. The accident was relevant to the question of the State's notice of the road's condition, as well as to the questions of road defect and causation. *See Tacke*, 220 Mont. at 9, 713 P.2d at 532; *Kalanick*, 242 Mont. at 52, 788 P.2d at 906. Consequently, we remand for a new trial. Because we do so, many of the other questions presented by the parties will likely arise again. We therefore take this opportunity to address the other evidentiary issues raised by the parties. Section 3-2-204(3), MCA; Rule 59(f), M.R.Civ.P.

## ISSUE THREE

¶39 *Did the District Court abuse its discretion when it refused to allow Ken Kailey to testify as an expert for Plaintiffs, due to the lack of a Rule 26(b)(4), M.R.Civ.P., disclosure when Kailey was not retained in preparation for litigation?*

10

¶40    The District Court prevented Missoula County traffic supervisor Ken Kailey (Kailey) from giving expert testimony for Plaintiffs because the Faulconbridges did not name him as an expert in response to interrogatories tendered pursuant to Rule 26(b)(4), M.R.Civ.P. The Faulconbridges assert they were not required to do so because Kailey "was not specially retained as an expert by either party" and, consequently, does not fit within the definition of an expert as contemplated by Rule 26(b)(4). The Faulconbridges analogize Kailey to a treating physician who is a fact witness with special expertise, and cite our decision in *Ostermiller v. Alvord* (1986), 222 Mont. 208, 720 P.2d 1198, in support of their position that such "hybrid" witnesses—those both possessing personal knowledge of the facts underlying the case, and capable of giving expert testimony—are not subject to Rule 26(b)(4) disclosure requirements.

¶41    The State counters that the issue is moot because the District Court actually allowed Kailey to give some expert testimony during rebuttal. The State also argues that the District Court properly excluded expert testimony from Kailey because the Faulconbridges did not disclose him as an expert in violation of the court's scheduling order. The scheduling order stated that all expert witnesses must be disclosed by March 18, 1998.

¶42    Rule 33, M.R.Civ.P., addresses the use of interrogatories for pre-trial discovery. The Rule is "liberally construed to make *all relevant facts* available to parties in advance of trial and to reduce the possibilities of surprise and unfair advantage." *Richardson v. State*, 2006 MT 43, ¶ 24, 331 Mont. 231, ¶ 24, 130 P.3d 634, ¶ 24. In *Ostermiller*, the defendant argued

11

on appeal that the district court abused its discretion when it admitted testimony of the treating physician despite the fact that defendant did not name the physician as an expert witness in response to interrogatories. *Ostermiller*, 222 Mont. at 212, 720 P.2d at 1201. We concluded that no surprise resulted from the admission of the physician's testimony, as the pretrial order and interrogatory answers had listed him as a witness, both parties had deposed him prior to trial, and the defendant failed to allege surprise. *Ostermiller*, 222 Mont. at 212, 720 P.2d at 1201. Thus, the holding in *Ostermiller* does not stand for the proposition that an expert disclosure need not be filed for a hybrid witness. Rather, we simply deemed plaintiff's argument "hyper-technical in view of the information furnished to the plaintiff." *Ostermiller*, 222 Mont. at 212, 720 P.2d at 1201.

¶43    Although it is not crucial to our resolution of this issue, we take this opportunity to underscore the distinction between a "hybrid" witness who is retained by a party in advance of or for purposes of litigation, and one who is not. Here, for example, Kailey was a Missoula County traffic supervisor. The Faulconbridges did not retain him in advance of litigation to perform any tests or conduct any analyses—thus, his factual and expert opinions would presumably be informally discoverable by any party at any time, and untainted by partisanship. The same is not generally true of an expert—be he "hybrid" or not—who is retained by a party in advance or anticipation of litigation. It is in the latter situation that a full Rule 26(b)(4) disclosure is clearly required under the language of the Rule. Nonetheless, if a party expects to secure Rule 702, M.R.Evid., testimony from *any* witness, and properly

12

framed interrogatories request such information, true and complete answers to such inquiries must be given.

¶44 Because we are already remanding for a new trial, it is not necessary for us to declare whether the District Court's refusal to admit Kailey's testimony was error. Moreover, in light of the retrial, it is unnecessary here to announce a new, hard and fast rule requiring that all "hybrid"—or mixed fact and expert witnesses—regardless of who, if anyone, hired them, come to trial equipped with a formal expert disclosure. Rather, for now, we leave the determination of the extent to which such witnesses may testify to the discretion of the district court, to be exercised dependent upon the pre-trial circumstances, including the opportunity for full discovery, with which the court is presented. We caution parties, however, that in order to avoid the prospect of limitations on witness testimony or outright witness exclusion, they should err on the side of caution when contemplating calling a witness who will testify both as to the facts of the case, and from the perspective of a witness possessing Rule 702, M.R.Evid., expertise. The better practice is to identify such witnesses as expert witnesses in response to interrogatories, and to provide any sort of expert disclosure for such witnesses as the Rules of Civil Procedure and the district court may require.

## ISSUE FOUR

¶45 *Did the District Court commit error when it permitted retired State employee James Weaver to serve as the State's representative and testify during trial?*

¶46 At the trial's outset, the District Court granted the State's motion to exclude all witnesses pursuant to Rule 615, M.R.Evid. The State designated its former employee, James

13

Weaver (James), as its representative for purposes of Rule 615(2), M.R.Evid., and thus, he was allowed to remain in the courtroom at counsel table while other witnesses testified. The Faulconbridges claim they were not aware until James began his testimony, however, that James was no longer a State employee but worked for a private engineering firm. James' testimony further revealed that the State was paying him an hourly rate to attend trial. Although it is difficult to ascertain precisely to what the Faulconbridges now object, we glean three issues from James' presence at trial as a corporate representative.

¶47    *a) May a party's designated trial representative testify as a fact witness after the court has granted a motion to exclude all witnesses pursuant to Rule 615, M.R.Evid.?*

¶48    The Faulconbridges claim that James should not have been permitted to testify as a fact witness after sitting through numerous witnesses' testimony because the court had granted the State's motion to exclude all witnesses pursuant to Rule 615, M.R.Evid. They cite *State v. Flowers*,[2] 2004 MT 37, 320 Mont. 49, 86 P.3d 3, *State v. Claric* (1995), 271 Mont. 141, 894 P.2d 946, and *State v. Radi* (1975), 168 Mont. 320, 542 P.2d 1206, in support of this argument. The State counters that the law allowed James to attend trial, the Faulconbridges failed to properly object to his testimony, and the Faulconbridges did not suffer prejudice by James' presence at trial prior to his testimony.

---

[2] We note that *Flowers* was published on February 24, 2004, James testified on February 6-7, 2004, and the Faulconbridges filed this appeal on May 25, 2004.

¶49     In addressing whether a Rule 615(2) representative may testify at trial, we take this opportunity to reconsider our conclusions in *Flowers* and *Claric*[3].  In *Flowers* and *Claric*, we deemed it trial error for the district court to allow a Rule 615(2) designated representative to testify as a fact witness after the court had granted a party's motion to exclude all witnesses pursuant to Rule 615, M.R.Evid.  *Flowers*, ¶ 24; *Claric*, 271 Mont. at 148, 894 P.2d at 951.  In both cases, however, we determined that the defendants were not prejudiced by the error.  *Flowers*, ¶ 29; *Claric*, 271 Mont. at 148, 894 P.2d at 951.

¶50     A careful reading of Rule 615, M.R.Evid., demonstrates that the conclusion reached in these cases contravenes the plain language of the Rule.  The Rule provides in pertinent part:

> At the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion.  *This rule does not authorize exclusion of* (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney . . . .

Rule 615(1), (2), M.R.Evid. (emphasis added).  Thus, the plain language of the Rule provides that both a natural person who is a party, and a designated representative of a party which is not a natural person, are permitted to remain in the courtroom notwithstanding the exclusion of other witnesses.

¶51     Such a conclusion also finds support in federal case law.  Montana Rule of Evidence 615(2) contains language identical to its federal counterpart; thus, federal interpretation has persuasive application to the Montana rule.  *U.S. Fidelity and Guar. Co. v. Rodgers* (1994),

---

[3] *Radi* does not support the Faulconbridges' assertion that James should have been excluded from trial.

15

267 Mont. 178, 181-82, 882 P.2d 1037, 1039. For example, in *Nanoski v. General Motors Acceptance Corp.* (8th Cir. 1989), 874 F.2d 529, 531, the court rejected the plaintiff's argument that a witness should not have been allowed to testify after a Rule 615 exclusion order, noting that the witness had been designated as defendant's representative, and concluding that "[a]n officer or employee of a party who has been designated as that party's representative is not excludable." *See also Oliver B. Cannon and Son v. Fidelity and Cas. Co.* (D.C. Del. 1981), 519 F.Supp. 668, 679, (interpreting Rule 615(2) in the singular and consequently forcing plaintiff's counsel to "choose which witness he wishes to designate as the corporation's representative and the court will also exclude that witness from its sequestration order."); *Queen v. Washington Metropolitan Area Transit Authority*, (D.C. Cir. 1988), 842 F.2d 476 (finding no error when the district court allowed driver of bus that hit plaintiff to attend trial and testify, after concluding she was an appropriate 615(2) representative and thus exempt from court's sequestration order).

¶52     There is no question that a person who is a party may both attend and testify at his or her own trial, and in fact legitimate constitutional concerns would present themselves should this right be called into question. The advisory committee notes to the Federal Rule 615(2) explain that "[a]s the equivalent of the right of a natural-person party to be present, a party which is not a natural person is entitled to have a representative present." Rule 615, Fed.R.Evid. advisory committee note (1972). Commentators have recognized that allowing select witnesses to remain while excluding all others actually subverts the policies behind

16

Rule 615's general requirement of excluding witnesses, but that Rule 615(2) is necessary to level the playing field.

> A party will often appoint as its representative the officer or employee most knowledgeable about the case. Thus, this second exception can give that crucial witness the opportunity to hear the other witnesses and tailor his testimony accordingly. Notwithstanding this risk, Rule 615(2) recognizes the exception in order to afford a party that is not a natural person a right comparable to the right the first exception affords to natural persons. This seems appropriate since criminal cases will always and civil cases will often match a party that is not a natural person against a party that is a natural person. Failure to equalize Rule 615 treatment of parties within the same case may not pose constitutional problems, but still smacks of unfairness.

29 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure, Evidence § 6245, at 76 (1997) (footnote omitted).

¶53 The plain language of the Rule, as well as federal case law, demonstrates that Rule 615(2) permits a validly designated representative to both remain in the courtroom during the trial, and testify. Consequently, we overrule *Flowers* and *Claric* to the extent that we stated that a valid designated representative under Rule 615(2), M.R.Evid., cannot both remain in the courtroom during trial and also testify.

¶54 *b) Is a former employee a proper representative for purposes of Rule 615, M.R.Evid.?*

¶55 The Faulconbridges assert that James' status as a former employee does not qualify him as an "officer or employee" within the language of Rule 615(2), M.R.Evid. The State counters that the Faulconbridges discovered on Friday at the outset of testimony that James no longer worked for the State, but did not object until Monday morning, and consequently, waived their objection regarding this matter. Although we are granting a new trial (*see* ¶ 38

17

above), this issue may well present itself again. Thus, we address now whether a former employee is a valid representative under Rule 615(2), M.R.Evid.

¶56 This Court's role in interpreting statutes is "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA; *See also Hilands Golf Club v. Ashmore*, 2002 MT 8, ¶ 20, 308 Mont. 111, ¶ 20, 39 P.3d 697, ¶ 20. Rule 615(2), M.R.Evid., states that the exclusion order does not authorize the exclusion of "an officer or employee of a party which is not a natural person designated as its representative by its attorney."

¶57 Thus, the plain language of the rule provides that an appropriate designated representative is "an officer or employee" of a party which is not a natural person. Any other reading, such as allowing the introduction of the word "former" into the statute, would "insert what has been omitted" in contravention of § 1-2-101, MCA. In light of the plain language of the statute, James, as a *former* state employee, does not qualify as proper representative under Rule 615(2), M.R.Evid., at retrial.

¶58 *c) Did the District Court err when it declined to grant the Faulconbridges a new trial based on James Weaver's presence and testimony*?

¶59 The Faulconbridges claim that James' attendance at trial as an improper Rule 615(2) representative and James' testimony outside his expert disclosure prejudiced them to a degree that they were entitled to a new trial. Additionally, they claim that because they were not aware of James' true employment status as an engineer for a private engineering firm, they were deprived of a "meaningful" voir dire and the knowledgeable use of juror challenges.

18

Because we have already ordered a new trial and have clarified the role James may occupy on retrial, we need not address this issue further. *Shamrock Motors, Inc.*, ¶ 19.

## ISSUE FIVE

¶60 *Did the District Court err when it determined that a violation of the Manual of Uniform Traffic Control Devices (MUTCD) did not constitute negligence per se and, on that basis, refused the Faulconbridges' proposed jury instructions and denied their motion for a directed verdict?*

¶61 Following the presentation of their case, the Faulconbridges moved for a directed verdict on the basis that they proved the State violated the MUTCD, and that such a violation constituted negligence *per se*. The Faulconbridges also proposed at least two jury instructions that reflected a negligence *per se* theory, all of which were rejected by the District Court. They contend that the facts in the present situation meet the five elements for negligence *per se* we established in *Massee v. Thompson*, 2004 MT 121, ¶ 30, 321 Mont. 210, ¶ 30, 90 P.3d 394, ¶ 30, and thus the court's refusal to grant the requested relief was error. Our precedent, however, suggests otherwise.

¶62 We have held that although the MUTCD has "the force of law," evidence of a violation of the MUTCD is merely "admissible to show negligence." *Schmidt v. Washington Contractors Group*, 1998 MT 194, ¶ 16, 290 Mont. 276, ¶ 16, 964 P.2d 34, ¶ 16. We have not held, nor do we now, that violation of the MUTCD constitutes negligence *per se*. Consequently, we conclude the District Court did not abuse its discretion when it refused jury instructions compelling a finding of negligence under a negligence *per se* theory.

19

Further, the District Court properly denied the Faulconbridges' motion for a directed verdict on this basis. *Schmidt*, ¶ 16.

## CROSS-APPEAL

## ISSUE SIX

¶63   *Did the District Court err when it denied the State's motion for summary judgment*?

¶64   On April 8, 1991, the State, the County, and the City of Missoula entered into an agreement to exchange responsibilities for maintaining certain sections of roadway.  Among other things, the County assumed all signing and maintenance obligations for the road upon which this accident occurred.  The contract took effect on July 1, 1992, five weeks before the accident.  The State moved for summary judgment on the basis that, as of the date of this accident, it no longer owed a duty regarding Juniper Drive due to the provisions of the maintenance contract.  The State further argued that since it no longer owed a duty regarding maintenance, the State should be dismissed from the action entirely because the Faulconbridges' complaint failed to assert any other theory under which the State could be liable.

¶65   The Faulconbridges maintain the District Court properly denied summary judgment because the State cannot escape liability for turning over a "defectively constructed, designed and signed road."  The Faulconbridges also assert that a jury should decide whether five weeks was an adequate time period for the County to be expected to remedy the road's deficiencies.  Finally, the Faulconbridges point to the District Court's pretrial order which

specified that the "slope of the roadway, radius and width of the curve" would be addressed at trial, to support their contention that the State's negligent design was also at issue.

¶66    In denying the State's motion for summary judgment, the District Court reasoned that the State's duty did not abate upon the contract's effective date of July 1, 1992. The court emphasized that the State was still responsible for the road's condition on the basis of the general duties it owes regarding its roads, as well as the State's ownership and control of the road for the preceding twenty years. The District Court consequently not only denied summary judgment, but disallowed the State from presenting to the jury any evidence of the maintenance contract. The court did not want the State to "blame the [c]ounty for what happened there because [the State had] passed the job to [the County] two weeks earlier," in violation of our holding in *Plumb*. *Plumb* forbids a defendant from apportioning liability to a third party not present at trial. *Plumb*, 279 Mont. at 379, 927 P.2d at 1021.

¶67    We review a district court's decision regarding summary judgment *de novo* using the same criteria the district court applies. *Jones v. County of Missoula*, 2006 MT 2, ¶ 12, 330 Mont. 205, ¶ 12, 127 P.3d 406, ¶ 12. The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact that would permit a non-moving party to succeed on the merits of the case. If the moving party meets that burden, in order to defeat summary judgment the non-moving party must provide substantial evidence that raises a genuine issue of material fact. *Jones*, ¶ 12. Summary judgment is "an extreme remedy, and is only appropriate when there is no genuine issue as to any material fact such that the

21

moving party is entitled to judgment as a matter of law." *Patterson v. Verizon Wireless,* 2005 MT 261, ¶ 9, 329 Mont. 79, ¶ 9, 122 P.3d 1193, ¶ 9.

¶68    The State has not met its burden to prove there are no genuine issues of material fact. The State has a duty concerning the original construction and design of the road under well-established Montana law.  *Buck v. State* (1986), 222 Mont. 423, 429, 723 P.2d 210, 214 (overruled on other grounds).  The State also is under a duty to keep its highways in a reasonably safe condition for ordinary use.  *Buck*, 222 Mont. at 429, 723 P.2d at 214.

¶69    A question of fact remains as to what extent and how quickly upon the road's transfer to the County under the maintenance contract the County could have reasonably been expected to fix a road that was arguably defective.  Consequently, the District Court did not err when it refused to grant summary judgment to the State on the basis the State no longer owed a duty following the maintenance agreement's effective date.  We also conclude that since the District Court's pretrial order supersedes the pleadings, *Craig v. Schell*, 1999 MT 40, ¶ 44, 293 Mont. 323, ¶ 44, 975 P.2d 820, ¶ 44, the Faulconbridges are entitled to pursue negligent design as a theory under which they may recover from the State.  Finally, we conclude the maintenance agreement does not reduce or eliminate the State's possible responsibility arising from the original construction and design of Juniper Drive.  *See Buck*, 222 Mont. at 429-30, 723 P.2d at 214.

¶70    We now turn to the issue of whether the District Court properly precluded the State from introducing into evidence its contract with the County.  As discussed above, a question of fact remains as to the condition of the road upon its transfer, as well as the degree to which

the County could have been expected to remedy any deficiencies within five weeks. Thus, it is appropriate for the jury to hear the evidence regarding the contract so that it can evaluate the reasonableness of the State's contention that it no longer had any responsibility for the road's condition or the accident in light of the contract provisions. The weight to be accorded to the contract is for the jury to determine.

¶71 We conclude the District Court did not err in denying the State's motion for summary judgment, but that it did abuse its discretion when it refused to permit the State to introduce evidence of the maintenance contract. We caution on remand that such evidence is not admissible for purposes of apportioning liability to the County in violation of *Plumb*.

## ISSUE SEVEN

¶72 *Did the District Court abuse its discretion when it prevented the State from introducing evidence of Jason Weaver's conduct?*

¶73 The State sought to introduce evidence of Jason's alleged intoxication, excessive speed, and misaimed motorcycle headlight. Although the State recognizes that Montana law precludes a defendant from apportioning liability to a non-party, it argues that evidence of Jason's conduct was admissible to negate causation under our decision in *Pula v. State*, 2002 MT 9, 308 Mont. 122, 40 P.3d 364, and to rebut breach of duty. Finally, the State asserts that the Faulconbridges opened the door to evidence of Jason's alleged intoxication in light of questions they posed to experts for both sides regarding normal driver reaction times.

¶74 The Faulconbridges claim that the District Court properly refused evidence of Jason's conduct because Montana law precludes apportionment of liability to third parties not present

23

at trial. The Faulconbridges disagree with the State's interpretation of *Pula*, and assert that the holding in that case allows the introduction of such evidence to negate causation only for purposes of demonstrating an intervening or superseding cause. The Faulconbridges further assert that the State's failure to plead superseding cause as an affirmative defense as mandated by Rule 8(c), M.R.Civ.P., precludes it from doing so now on appeal. Finally, the Faulconbridges dispute the State's assertion that their questions regarding normal human reaction times justify opening the door to evidence of intoxicated driver reaction times.

¶75     First, we decline to address the State's contention that the law entitles it to introduce evidence of Jason's conduct to rebut breach of duty. The State failed to provide any case law in support of its theory that third-party conduct somehow affects the degree of duty a defendant owes to a plaintiff. We now turn to the question of whether Jason's conduct as driver of the motorcycle is admissible on other grounds.

¶76     We also note initially that § 27-1-703(6)(a) (2002), MCA, the statute in effect at the time of trial and today, which allows the defendant to apportion liability to settled third parties provided that procedural mandates are met, was not the law in effect at the time of the accident. *See* commission comments to § 27-1-703, MCA, providing that the statute applies to causes of action that arise after April 18, 1997. As this accident occurred in 1992, this statute does not apply in the present case. Nor does the version of the statute in effect at the time of the accident, § 27-1-703(4) (1991), MCA, apply in light of this Court's decision in *Newville v. State, Dept. of Family Services* (1994), 267 Mont. 237, 883 P.2d 793, wherein we deemed the earlier version of the statute an unconstitutional violation of plaintiffs' and

24

defendants' due process rights. This statutory anomaly does not however, obviate the necessity of addressing the issue before us.

¶77 A plaintiff has the burden to prove duty, breach, causation and damages to recover under a negligence claim in Montana. *Barr v. Great Falls Intern. Airport*, 2005 MT 36, ¶ 41, 326 Mont. 93, ¶ 41, 107 P.3d 471, ¶ 41. The defendant may raise several defenses to a negligence action, including the defense that the plaintiff failed to prove that the defendant caused the damage to the plaintiff. *See, e.g., Hinkle v. Shepherd School Dist. #37*, 2004 MT 175, ¶ 39, 322 Mont. 80, ¶ 39, 93 P.3d 1239, ¶ 39 (affirming a district court's summary judgment order on the grounds that plaintiffs could not prove the element of causation). As noted, conduct of an unnamed third party is generally not admissible to apportion liability. *Plumb,* 279 Mont. at 379, 927 P.2d at 1021. The issue presented here is whether the conduct of a settled third party is admissible to rebut causation in *any* case in which multiple causes may be at play, or whether such conduct is admissible only in those instances in which it is alleged that the settled party's conduct was a superseding intervening cause which cuts off the liability of the party on trial.

¶78 The State interprets our holding in *Pula* to broadly allow evidence of third-party conduct to rebut causation. In *Pula*, arrestee Wendy Pula sought damages from the City of Chinook and its officers, Blaine County and its sheriff, and the State of Montana, arising out of her rape by fellow inmate Bauer at the county jail who had been moved to the jail from state prison for his protection. Despite the fact that he was serving a state sentence for sexual assault, Bauer had been allowed by county authorities to roam the facility freely in civilian

25

clothes, and had been given the keys to Pula's cell, leading eventually to her rape. After her claims against the city and the county were settled, Pula proceeded to trial against the State, alleging that it had failed to properly monitor or control its dangerous inmate. The State countered that the conduct of the settled parties, who were the immediate custodians of Bauer and who had allowed Bauer access to Pula's cell, as well as the conduct of Bauer himself, were superseding intervening causes, cutting off any liability on its part. Pula sought an order *in limine*, to exclude evidence of these purported superseding and intervening causes, but the district court denied her motion. The jury ultimately concluded that the State was negligent, but that its negligence was not a cause of Pula's injuries. *Pula*, ¶¶ 1-10.

¶79 Pula appealed, contending the court erred in denying her motion *in limine*. Pula argued that admission of non-parties' misconduct was an impermissible attempt on the part of the State to apportion liability to non-parties, in violation of *Plumb*. In upholding the district court's decision to admit the conduct of the settled parties into evidence, we concluded that *Plumb* did not apply to Pula's case because the issue was "not how to apportion blame among several liable parties but whether, because of the intervening negligence of another, the State's acts or omissions could be said to be the cause of Pula's injuries." *Pula*, ¶ 17. Thus, *Pula* reconfirmed the validity of the intervening cause exception to the general test for causation following our decision in *Plumb*. *Pula,* ¶ 17.

¶80 Subsequently, in *Tripp v. Jeld-Wen, Inc.*, 2005 MT 121, ¶ 20, 327 Mont. 146, ¶ 20, 112 P.3d 1018, ¶ 20, we cited *Pula* as a parenthetical example of when we might allow evidence of third-party negligence to show causation. The issue in *Tripp*, however, was

26

whether evidence of a third-party settlement for purposes of illustrating party bias under Rule 408, M.R.Evid., was admissible. The case did not involve the issue of admitting evidence for purposes of causation. Thus, this Court has never applied *Pula* to allow evidence of third-party conduct to rebut causation generally.

¶81    We conclude, after revisiting *Pula* and its subsequent application, that a defendant may introduce non-party conduct only for the purpose of demonstrating that the non-party conduct was a superseding intervening cause of plaintiff's damages. By "superseding intervening cause" we mean "an unforeseeable event that occurs after the defendant's original act of negligence . . . [which] will generally serve to cut off defendant's liability." *Whiting v. State* (1991), 248 Mont. 207, 216, 810 P.2d 1177, 1183. A defendant may not, however, introduce such non-party conduct in an attempt to merely diminish its own responsibility, for this would constitute an attempt to apportion fault to a non-party, in violation of *Plumb.*

¶82    The Faulconbridges assert that the State failed to plead intervening superseding cause as an affirmative defense pursuant to Rule 8(c), M.R.Civ.P. The State points out that the plain language of the Rule does not require it to affirmatively plead superseding intervening cause. The Rule lists the specific affirmative defenses that must be pled, and intervening superseding cause is not within that list. Rule 8(c), does however require that "any other matter constituting an avoidance or affirmative defense" be pled. The Rule states further "[w]hen a party has mistakenly designated a defense as a counterclaim or a counterclaim as a

27

defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." Rule 8(c), M.R.Civ.P.

¶83    Here, MRL brought a third-party action against Jason Weaver. Jason then brought counterclaims against the State, MRL and the County, and the State brought a cross-complaint against Jason. Thus, while the State did not officially "counterclaim," it did bring an action against Jason. The State's action against Jason alleged, *inter alia*, that he caused the accident. Further, the State included as an affirmative defense in its initial answer that any damages the Faulconbridge suffered "are the result of the active and primary negligence or fault on the part of the [S]tate's co-defendants and plaintiffs. . . ."

¶84    The pleadings put the Faulconbridges on sufficient notice of the State's intent to seek to establish intervening superseding cause, so that no unfair surprise resulted. Thus, although technically the State should have included superseding intervening cause as an affirmative defense, "justice requires" that we treat the State's answer as if there had been a proper designation.

¶85    This, however, does not conclude our analysis. Under the law, only an unforeseeable superseding or intervening cause cuts off the chain of causation so as to absolve the named defendant. *Estate of Strever v. Cline* (1996), 278 Mont. 165, 178-79, 924 P.2d 666, 673-74. Inversely stated, foreseeable actions do not break the chain of causation. *Cusenbary*, ¶ 25.

¶86    The Faulconbridges ask this Court to declare that Jason's conduct was foreseeable as a matter of law under our decision in *Cusenbary*, and therefore urge us to strike the State's causation defense. In *Cusenbary*, we stated that "when reasonable minds could reach but one

28

conclusion, the question of foreseeability may be determined as a matter of law." *Cusenbary*, ¶ 39, citing *Kiger v. State* (1990), 245 Mont. 457, 462, 802 P.2d 1248, 1251.

¶87    The plaintiff in *Cusenbary* sued a bar owner for injuries he sustained when another bar patron, while intoxicated, drove his car through the bar's wall, striking the plaintiff. The bar owner asserted as an affirmative defense that the driver's conduct was an intervening superseding cause that was not reasonably foreseeable. We upheld the district court's decision to strike the owner's affirmative defense because we concluded that the driver's actions of driving while intoxicated, after being over-served in the bar, were foreseeable as a matter of law. *Cusenbary*, ¶ 39.

¶88    We also addressed the foreseeability of an alleged superseding intervening cause in *Thayer v. Hicks* (1990), 243 Mont. 138, 793 P.2d 784, where, citing *Nehring v. LaCounte* (1986), 219 Mont. 462, 470, 712 P.2d 1329, 1334, we said that "[a] defendant's liability for his wrongful act will not be severed by an intervening cause if the intervening cause is one that the defendant might reasonably foresee as probable or one that the defendant might reasonably anticipate under the circumstances." *Thayer*, 243 Mont. at 155, 793 P.2d at 795.

¶89    Thus, we must resolve for remand purposes whether a party that is purportedly responsible for the design, maintenance, and/or construction of a roadway should "reasonably foresee as probable" or "anticipate" that a driver might drive his motor vehicle upon that highway in a negligent manner. *Thayer*, 243 Mont. at 155, 793 P.2d at 795. If so, then even if Jason was arguably negligent in the operation of his motorcycle, his conduct would not, as a matter of law, cut off the State's potential liability for Elisha's injuries. We conclude that

29

on this question, reasonable minds could reach but one conclusion, and thus the question of foreseeability can and should be determined here as a matter of law. *Cusenbary*, ¶ 39.

¶90     When it is State's responsibility to design, maintain, and/or repair a roadway, that duty extends to both the highway and the adjacent parts thereof, "as it is common experience that vehicles may stray or swerve from the usual traveled portion thereof." *Buck*, 222 Mont. at 429, 723 P.2d at 214.  In other words, driver error is anticipated.  The circumstances in *Buck* are strikingly similar to those presented here.  There, the plaintiff driver and passengers sued the state, alleging injuries sustained as a result of negligent design, construction and maintenance of a highway.  As they do here, the plaintiffs in *Buck* maintained that the area of the roadway where the accident occurred contained a dangerous curve for which there was insufficient warning.  The State, as it does here, denied negligence, and alleged that the accident was solely caused by the driver's intoxication and negligent driving.  As a result of challenged jury instructions, the jury concluded that the State was negligent but that its negligence was not the proximate cause of the accident.  We reversed and remanded for a new trial.  Our reasons for doing so are instructive.

¶91     We concluded in *Buck* that the "intervention of another force" (that being the conduct of the driver) does not relieve the State of liability.  *Buck*, 222 Mont. at 431, 723 P.2d at 216.  We said that the court's jury instruction, which allowed the jury to determine that the accident was caused solely by the conduct of the driver, failed to give consideration to "the continuing nature of the negligence of the County . . . to and through the time of the accident."  *Buck*, 222 Mont. at 431, 723 P.2d at 217.  Importantly for our analysis, the Court

30

said that it was "idle to argue" that plaintiffs' injuries were not foreseeable, or "not reasonably to be expected to happen in a natural sequence of events." *Buck*, 222 Mont. at 432, 723 P.2d at 217. Thus the Court clearly determined in *Buck* that the fact that the driver was arguably negligent did not serve to cut off the State's liability for its negligence in the design and maintenance of the road.

¶92 Although in *Buck* the jury had the right to consider the negligence of the driver in assessing fault because he was a party in the case, the same is not true here in light of the fact that the driver is a non-party and his fault may not be apportioned in this case. *Plumb*, 279 Mont. at 379, 927 P.2d at 1021. What is true, as our case law illustrates, is that driver error is indeed to be anticipated by one responsible for roadway design and maintenance, and therefore cannot, as a matter of law, completely sever the State's potential liability for its wrongful acts. This is not to say that the State has no defenses; we simply hold that the non-party driver negligence asserted here does not constitute conduct that is unforeseeable such that it cuts off the State's liability for its own conduct.

¶93 Finally, the State asserts that the Faulconbridges opened the door to evidence of Jason's alleged intoxication in light of questions they posed to experts for both sides regarding normal reaction times. As indicated above, we review questions regarding the admissibility of evidence for an abuse of discretion. *Southern*, ¶ 48. Because we are reversing here for reasons unrelated to this ruling, we will not address this particular allegation of error here. However, if on remand the plaintiffs again ask the experts to give

31

opinions regarding normal driver reaction times, it will be incumbent on the District Court to take up the issue at that time and on the basis of the record then presented.

¶94    Pursuant to the foregoing analysis, we therefore conclude that the District Court did not err when it refused to allow the jury to consider Jason's alleged negligence in operating his motorcycle in order to negate causation.

## ISSUE EIGHT

¶95    *Did the District Court abuse its discretion when it refused to admit evidence of Elisha's alleged contributory negligence*?

¶96    The State argues that the District Court abused its discretion when it refused to admit evidence of Elisha's alleged contributory negligence.  The State asserts that it should have been allowed to present evidence that Elisha knew or should have known that Jason had been drinking, that his motorcycle's headlight was misaimed, and that he was speeding.  The State's reply brief includes for the first time Elisha's refusal to wear a helmet as further evidence of her contributory negligence.

¶97    The Faulconbridges counter that the State's attempts to introduce evidence of Elisha's alleged contributory negligence is merely an attempt to apportion liability impermissibly between her and Jason, in violation of *Plumb*.  They also contend that this Court looks to a passenger's subjective awareness to determine whether she was contributorily negligent as a matter of law.  Thus, the Faulconbridges claim that Elisha cannot be found negligent in light of the State's failure to produce evidence that she had subjective knowledge of Jason's alleged impairment.

32

¶98     We note initially that a driver's negligence cannot be imputed to a passenger for the purpose of comparative negligence. *Buck*, 222 Mont. at 430, 723 P.2d at 214. If sufficient evidence exists to show that in the exercise of ordinary care the passenger should not have chosen to ride with an intoxicated driver, however, "the jury should be so instructed as a separate issue of negligence involving the passenger[]." *Buck*, 222 Mont. at 432, 723 P.2d at 217. Therefore, in the case before us, although the State may not admit evidence of Jason's negligence to either prove Elisha's negligence or diminish or eliminate the State's fault, it would be entitled to introduce evidence in an attempt to establish Elisha's own alleged negligence.[4] *See Buck*, 222 Mont. at 432, 723 P.2d at 217.

¶99     Comparative negligence is a question of fact for the jury to decide. *See Contreras v. Fitzgerald*, 2002 MT 208, ¶ 25, 311 Mont. 257, ¶ 25, 54 P.3d 983, ¶ 25. Comparative negligence compares the conduct of the parties "based on evidence of negligence and contributory negligence, as established by reasonable and prudent person standards." *Lewis v. Puget Sound Power & Light Co.*, 2001 MT 145, ¶ 25, 306 Mont. 37, ¶ 25, 29 P.3d 1028, ¶ 25; *See also Mead v. M.S.B., Inc.,* (1994), 264 Mont. 465, 478, 872 P.2d 782, 790 ("analyzing [plaintiff's] conduct under the objective standards which apply to contributory negligence. . . .") Thus, Montana law does not support the Faulconbridges' assertion that the jury must decide that Elisha was *subjectively* aware of Jason's alleged negligence or intoxication before finding her comparatively negligent.

---

[4] The State may also use this evidence to attempt to distinguish the accident at issue from the 1986 accident during cross-examination. *See* discussion at ¶ 34.

¶100   We conclude the District Court abused its discretion when it prevented the State from introducing evidence of Jason's conduct in an attempt to establish Elisha's alleged comparative negligence.   On retrial, we caution that the State may only introduce such evidence to compare Elisha's alleged negligence with the State's negligence, and must refrain from imputing Jason's conduct to her, to either apportion liability or attribute his negligence to Elisha.  *See Plumb*, 279 Mont. at 379, 927 P.2d at 1021; *Buck*, 222 Mont. at 430, 723 P.2d at 214.  Further, under our prior case law, the objective person standard used in negligence actions will apply.  *Lewis*, ¶ 25.

¶101   Affirmed in part, reversed in part, and remanded for a new trial.


/S/ PATRICIA COTTER


We Concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ BRIAN MORRIS


Justice John Warner dissenting.

¶102   I dissent.  In deciding Issue Two the Court unfortunately discards the District Court's careful analysis of whether the previous accident in 1986 is substantially similar to the 1992 accident involved in this case, ignores our abuse of discretion standard for reviewing such

evidentiary rulings, and blithefully substitutes its interpretation of the evidence for that of the District Court.

¶103 A district court has broad discretion to determine the admissibility of evidence, and this Court reviews a district court's evidentiary rulings for an abuse of discretion. *Kiely Constr., L.L.C. v. City of Red Lodge*, 2002 MT 241, ¶ 92, 312 Mont. 52, ¶ 92, 57 P.3d 836, ¶ 92. To reverse a district court's evidentiary ruling for abuse of discretion, this Court must determine that the district court either "acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Kiely*, ¶ 92 (quoting *Jarvenpaa v. Glacier Elec. Coop., Inc.*, 1998 MT 306, ¶ 13, 292 Mont. 118, ¶ 13, 970 P.2d 84, ¶ 13).

¶104 In an Order and Memorandum dated February 23, 2000, the District Court examined the similarities, as argued by the Faulconbridges, and differences, as argued by the State, between the accident in the present case and the accident in 1986. The District Court concluded that they were not substantially similar for the following reasons:

> (1) car versus motorcycle involves different safety considerations and the dynamics of vehicle control are obviously dissimilar; (2) daylight versus night involves the dissimilar interaction of light on visible objects; (3) no alcohol versus alcohol introduces multiple non-design issues; (4) no dust versus dust presents factors of impaired vision, roadway maintenance, and third-party actions; and (5) no sign versus sign presents issues of warning and human error.

Each one of these reasons is supported by the record. In this case, the District Court most certainly did not act arbitrarily, nor did it exceed the bounds of reason.

35

¶105   All three of the cases cited by the Court--*Kalanick*, *Tacke*, and *Kissock*--present facts that show a great deal more similarity between the instances discussed therein than the two accidents at issue in the present case.  The plaintiff in *Kalanick* suffered an injury while manually lifting railroad ties, and the district court allowed the introduction into evidence of an injury that occurred six years before.  The district court determined that the prior accident was substantially similar, because both involved a laborer who injured his back while lifting rail ties manually.  The laborers in both accidents also worked under the same foreman.  This Court affirmed the district court's exercise of discretion in admitting the evidence.  *Kalanick*, 242 Mont. at 52, 788 P.2d at 905-06.

¶106   In *Tacke,* the plaintiffs sought introduction of multiple accidents involving hay balers, some of which the district court did not allow into evidence.  *Tacke*, 220 Mont. at 5, 713 P.2d at 530.  This Court determined that all the accidents involving hay balers with compression rollers should have been admissible, even if the accidents involved different models of hay balers.  *Tacke*, 220 Mont. at 9, 713 P.2d at 532.  The conclusion that multiple accidents involving compression rollers could be similar does not logically translate into a conclusion that the substantial dissimilarities in this case, as noted by the District Court, should be simply disregarded.

¶107   In *Kissock*, the district court found the two slip-and-falls to be dissimilar because the plaintiff failed to show they occurred "even near to the same time of day."  *Kissock*, ¶ 14. This Court determined that this minor discrepancy went to the weight of the evidence rather than its admissibility.  *Kissock*, ¶ 19 (citing *Bailey v. S. Pac. Transp. Co.* (5th Cir. 1980), 613

F.2d 1385, 1389).  Apart from this minor discrepancy, the two accidents shared many similarities.  Both occurred under winter-like conditions, both occurred days apart, and both occurred on walking areas leading to the Butte Convalescent Center. *Kissock*, ¶¶ 20-21.  In my view, the circumstances presented in *Kissock* do not begin to justify the Court's disregard of the District Court's discretionary determination that the facts presented by the 1986 accident are not substantially similar to, and are too remote from, the accident in question here, as required by *Kissock*. *Kissock*, ¶ 16.

¶108   The 1986 accident did occur at the same location, and the roadway was basically the same.  However, the dissimilarities are obvious, as aptly pointed out by the District Court. The relevance of the 1986 accident to this case is highly questionable.  The Court's statement at ¶ 37, that the circumstances of the two accidents are more similar than they are different, is simply not supported by the record.  Moreover, as stated above, that is not the question before us.  The question is whether the District Court acted arbitrarily or exceeded the bounds of reason.  It did neither.

¶109   Relating to the Court's discussion of Issue Four, I would not reverse the judgment and remand for a new trial because the former state employee, James, represented the State, was present during the testimony of other witnesses and testified at the trial.  I agree with the Court that James was not a valid designated representative of the State under Rule 615(2), M.R.Evid.  However, as noted by the Court at ¶ 54, the Faulconbridges learned of James' status as a former employee at the outset of testimony on a Friday, but did not object until the following Monday. A complaining party must object as soon as the grounds for objection are

37

apparent to preserve an issue for appeal. *McDermott v. Carie, LLC*, 2005 MT 293, ¶ 14, 329 Mont. 295, ¶ 14, 124 P.3d 168, ¶ 14. I conclude that Faulconbridges waived their right to appeal on this issue.

¶110 I would further conclude that the District Court was not in error when it denied Faulconbridges' motion for a new trial because of James' employment by WGM, Inc., a company that had a business relationship with one of the jurors. The District Court addressed this matter in considering the motion and determined that, based on the juror's affidavit, he did not know James, his business dealings with James' employer were limited, and he had no financial connection with James' employer. Additionally, the record indicates that the juror was asked on voir dire whether he knew any of the witnesses, including James, and indicated that he did not. I agree with the District Court that the Faulconbridges were not prejudiced. *See Flowers*, ¶¶ 28-29.

¶111 I would affirm the judgment of the District Court.


/S/ JOHN WARNER


Chief Justice Karla M. Gray joins in the foregoing dissenting Opinion.

/S/ KARLA M. GRAY

38