Justice Jim Rice delivered the Opinion of the Court.
***312 ¶ 1 Plaintiff Kenneth Daley (Daley) appeals from the jury verdict in favor of Defendant *673 Burlington Northern Santa Fe Railway Company ("BN"), entered in the Eleventh Judicial District Court, Flathead County. We address the following issues raised by Daley:
1. Did the District Court abuse its discretion by excluding evidence at trial?
2. Was Daley denied a fair trial due to BN's trial misconduct?
3. Was Daley denied a fair trial due to BN's discovery misconduct?
We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
¶ 2 Daley brought this case against BN under the Federal Employers Liability Act (FELA) and the Locomotive Inspection Act (LIA). Daley worked at the Somers rail tie treatment plant operated by BN's predecessor from 1967 until it closed in 1986, and alleged injury from exposure to asbestos during his work there. The case was heavily litigated, with many pretrial motions. In July 2017, after a seven-day trial, a jury determined that BN had not violated the standard of care ***313 under FELA and had not violated the LIA. After trial, Daley moved the Court to enter default judgment against BN for asserted litigation misconduct, which was deemed denied. Daley appeals. Additional facts as necessary will be provided herein.
STANDARD OF REVIEW
¶ 3 The parties agree that issues raised by Daley are reviewed for abuse of discretion. "We review a district court's evidentiary rulings for an abuse of discretion. The district court has broad discretion in determining the admissibility of evidence." Puccinelli v. Puccinelli , 2012 MT 46, ¶ 12, 364 Mont. 235, 272 P.3d 117. A district court's determination to impose sanctions for litigation misconduct is reviewed for abuse of discretion. Spotted Horse v. BNSF Ry. Co. , 2015 MT 148, ¶ 15, 379 Mont. 314, 350 P.3d 52 (citations omitted). We review a district court's decisions regarding discovery for abuse of discretion. In re Estate of Harmon , 2011 MT 84A, ¶ 52, 360 Mont. 150, 253 P.3d 821 (amended; citations omitted). "[W]e generally defer to the district court because it is in the best position to determine both whether the party in question has disregarded the opponent's rights, and which sanctions are most appropriate." Spotted Horse , ¶ 15 (citations omitted); accord Harmon , ¶ 52 (citations omitted). Similarly, "[a] district court has broad discretion when instructing a jury, which the appellate court reviews for abuse of discretion. We review the instructions as a whole to determine whether they fully and fairly instruct the jury on the applicable law. Reversible error occurs only when the instructions prejudice the defendant's substantial rights." State v. Sanchez , 2017 MT 192, ¶ 7, 388 Mont. 262, 399 P.3d 886 (internal citations omitted). An abuse of discretion occurs if the district court acts arbitrarily without the employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice. State v. Sage , 2010 MT 156, ¶ 21, 357 Mont. 99, 235 P.3d 1284 (citations omitted).
DISCUSSION
¶ 4 1. Did the District Court abuse its discretion by excluding evidence at trial?
¶ 5 Daley challenges many of the District Court's trial evidentiary rulings, which we analyze individually below. Foundationally, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable," including evidence "bearing upon the credibility of a witness," M. R. Evid. 401, and is generally admissible, M. R. Evid. 402.
***314 Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." M. R. Evid. 403. Evidence of other acts is not admissible to prove character "in order to show action in conformity therewith," however, may be admitted for other purposes, including knowledge. M. R. Evid. 404(b). Evidence "of habit or of routine practice" is generally admissible to prove conduct in conformity therewith. M. R. Evid. 406(b).
*674 ¶ 6 Applying these principles, we have determined that "[e]vidence of other accidents is not admissible to show negligence." Faulconbridge v. State , 2006 MT 198, ¶ 30, 333 Mont. 186, 142 P.3d 777 (citations omitted). However, such evidence may be admitted "to show the existence of a danger or defect and notice or knowledge thereof" if the other accidents are "substantially similar to" and "not too remote from the accident in question." Faulconbridge , ¶ 30 (citations omitted).
¶ 7 Daley's arguments broadly assert that BN obtained favorable rulings to its requests to exclude evidence, and then made arguments that would have been contradicted by the excluded evidence. "[T]he authority to grant or deny a motion in limine rests in the inherent power of the court to admit or exclude evidence and to take such precautions as are necessary to afford a fair trial for all parties." State v. Ankeny , 2010 MT 224, ¶ 38, 358 Mont. 32, 243 P.3d 391 (citations omitted). We have held that, when one party "opens the door" by broaching a topic that has been excluded, the trial court does not abuse its discretion by permitting the other party to offer evidence to correct a false impression. State v. Guill , 2010 MT 69, ¶ 39, 355 Mont. 490, 228 P.3d 1152 (citations omitted). "District courts have broad discretion to determine the extent to which a party may respond once the other party opens the door." Guill , ¶ 39 (citations omitted).
BN's 2004 10-K Report.
¶ 8 BN's 2004 Form 10-K, a report required by the Securities and Exchange Commission for distribution to shareholders, stated in part:
The company is party to a number of personal injury claims by employees who worked around asbestos. The heaviest exposure for [BN] employees was due to work conducted in an around the use of steam locomotive engines that were phased out between the years of 1950 and 1967. However, other types of exposure, including exposure from locomotive component parts and building materials, continued after 1967, until substantially eliminated by 1985.
***315 ¶ 9 The District Court granted BN's motion in limine to exclude the argument that BN had placed "profits over safety," reasoning that BN's profits were irrelevant to its standard of care under FELA to provide a "reasonably safe" workplace. The Form 10-K was referenced in the Court's order as evidence that could be offered in support of the prohibited "profits over safety" argument.
¶ 10 As Daley's Counsel was preparing to give his opening statement, Defense Counsel noticed an enlargement of the Form 10-K and asked for a sidebar conference, objecting that the Form had been excluded by the Court's order, and that it referenced other personal injury claims not substantially similar to Daley's. Daley responded that the order had merely precluded arguments about "profits over safety," and did not exclude the Form 10-K altogether. The District Court barred Daley's use of the Form in his opening, reasoning it was excluded by the order and that only stipulated exhibits should be used in opening statements, and denied a later attempt by Daley's Counsel to offer it.
¶ 11 Daley argues the Court erred because Form 10-K was not subject to the order, and was admissible under several hearsay exceptions. He argues BN, after getting the Form excluded, later argued that Daley had not been exposed to asbestos while working around locomotives, despite the general acknowledgement on Form 10-K of the existence of such claims, and that, therefore, "Daley was not allowed to present the truth, including [BN]'s admissions against interest." BN answers that the evidence was properly excluded on Rule 403 grounds, as the referenced claims on the Form were too remote, and that any alleged error was harmless because similar evidence about steam locomotives containing asbestos was presented by Daley's experts during trial.
¶ 12 Given that we review evidentiary rulings for abuse of discretion, Puccinelli , ¶ 12, the District Court's interpretation of its own evidentiary ruling would receive the same deferential review, and we are disinclined to second-guess the Court's application of its prior ruling. Form 10-K was referenced within the Court's "profits over safety" order, *675 and the Court could have reasonably interpreted the order as excluding that document when the issue was revisited. Even if Form 10-K had not been previously referenced, the District Court could have later extended its ruling to the Form. Daley did not establish that the general reference in the Form to other "personal injury claims by employees who worked around asbestos" involved circumstances that were "substantially similar" to his claims and "not too remote." Faulconbridge , ¶ 30. Given the lack of demonstrated comparable circumstances between the claims mentioned on the Form 10-K and Daley's experience at the Somers plant, we are not convinced ***316 the District Court abused its broad discretion, Guill , ¶ 39, by excluding the evidence, even after BN argued Daley had not been exposed to asbestos. As a matter of context, despite Daley's argument that he "was not allowed to present the truth," the District Court admitted, over BN's repeated objections, extensive historical documentation of BN's predecessors' understanding of asbestos-related disease, dating back to the 1930s, including documents demonstrating their awareness of the health risks and recommended control measures. The District Court also admitted extensive evidence concerning asbestos exposure at the Somers plant, and allowed Dr. Spear, Daley's industrial hygiene expert, significant latitude in his testimony, including about other employees exposed to asbestos who had different jobs than Daley.
BN's Safety History.
¶ 13 The District Court granted BN's motion in limine to preclude admission of evidence, including several letters, which referenced non-asbestos OSHA violations by BN and its refusal to permit access, at other plants, to OSHA inspectors without a warrant. The District Court acknowledged the evidence could be admissible under Rule 406 as habit evidence, but excluded it under Rule 403, reasoning that "the evidence does not appear particularly relevant to show that there were violation of OSHA regulations concerning occupational asbestos exposure at the Somers Tie Plant.... the risk of prejudice, confusion of the issues, and amount of time to develop the evidence from other facilities concerning non-asbestos OSHA regulations militates against its admissibility."
¶ 14 Daley argues the District Court erred by excluding the letters, first, as evidence of habit or as a party admission, and then by not admitting them in response to BN's "opening the door" by asserting during opening statement it was a workplace safety leader, which Daley contends left the jury with "an intentionally false image of the railroad's safety record that was irreconcilable with the excluded evidence." BN answers that the incidents referenced in the letters had no relation to Daley or the Somers plant, and that Daley did not preserve the asserted error for appeal.
¶ 15 Given the remoteness between the infractions referenced in the letters and either the Somers plant or Daley's asbestos claim, Faulconbridge , ¶ 30, we cannot conclude the District Court's initial exclusion of the letters under Rule 403 was arbitrary or exceeded the bounds of reason. Evidence admissible under Rule 406 is nonetheless subject to exclusion under Rule 403. See , e.g. , State v. Huerta , 285 Mont. 245, 256, 947 P.2d 483, 490 (1997). The District Court admitted significant evidence regarding asbestos-related violations of industry ***317 standards and OSHA rules at the Somers plant, including failure to test for asbestos, post required safety posters, provide safety equipment, including respirators, train workers on the proper use of safety equipment, provide medical evaluations, and remove asbestos. Secondly, it is doubtful that Daley preserved the issue of BN's "opening the door" to admission of the evidence. "In order to preserve an objection to the admission of evidence for appeal, the objecting party must make a timely and specific objection on the record." State v. Clausell , 2001 MT 62, ¶ 25, 305 Mont. 1, 22 P.3d 1111 (citing M. R. Evid. 103(a)(1) ). "The reason for the contemporaneous objection rule ... is to allow the district court an opportunity, where possible, to remedy any error and we will not put a trial court in error where it has not been given such a chance to correct itself, absent an exception to the rule." Clausell , ¶ 25 (citations omitted). Daley does not demonstrate from the record that he argued BN's opening statement had *676 opened the door to admission of the letters. Daley points to an "Offer of Proof" he filed with the District Court five days into the trial, which offered further argument regarding nine evidentiary rulings he asserted were error, including this one, but that document made no request for relief. It was filed days after the opening statements were made, and it is questionable whether this filing timely provided an opportunity for the court to remedy any error. Further, given the plethora of issues then raised, with no suggested remedy, we cannot see how the trial court could have viably addressed them. We conclude the District Court did not abuse its discretion by excluding the letters.[1]
Deposition of Mr. Wang and Mr. Fuller.
¶ 16 Richard Wang and Robert Fuller, both deceased, were coworkers with Daley at the Somers plant. Both filed lawsuits against BN for asbestos exposure in the 1990s. The District Court admitted some of their deposition testimony, including their testimony about exposure to asbestos at the Somers plant, reasoning it was relevant to Daley's claim. The District Court excluded any reference to Wang and Fuller's illnesses and death, because there was no evidence in their depositions that they had suffered from asbestos-related diseases, and excluded reference to the lawsuits they had filed, reasoning these were irrelevant.
¶ 17 In its opening statement, BN addressed Wang and Fuller's ***318 testimony, stating, "[a]nd they were talking about their claims of exposure to asbestos at the Somers plant." BN highlighted inconsistencies in their testimony about their exposure to asbestos and noted that Daley did different jobs than Wang and Fuller. BN stated:
So what Mr. Daley-and he knew Mr. Wang and Mr. Fuller. Were they exposed to harmful levels of asbestos at any part of their job? Well, the answer is no. And one really compelling reason we know that is because it was tested.
BN went on to describe the 1983 test results it intended to introduce. Daley did not object, though later asked the court to admit evidence of the claims Wang and Fuller filed because BN had opened the door to the issue. In response, Defense Counsel incorrectly recounted, "I didn't say they had any claims." The District Court withheld ruling on the matter until it could review the transcript. When Daley again raised the issue, and read the transcript, the District Court declined to admit evidence of Wang and Fuller's claims.
¶ 18 On appeal, Daley argues BN opened the door to the issue of Wang and Fuller's asbestos claims by mentioning the term "claims" and asserting that Wang and Fuller had not been exposed to asbestos. BN responds that the District Court appropriately balanced the issue, admitting Wang and Fuller's testimony about their asbestos exposure but excluding evidence about their legal claims on relevance grounds, given that their asserted injuries were not substantially similar, and the lack of evidence from the depositions that the co-workers had been diagnosed with asbestos-related diseases.
¶ 19 While Defense Counsel's reference during opening statement to Wang and Fuller's "claims" was likely a violation of the District Court's order, any prejudice or false impression given to the jury from this singular mention, made in passing with no additional detail, was minimal. Daley was permitted to present both Wang and Fuller's testimony regarding their exposure to asbestos at the Somers plant, including Fuller's testimony that there was dry "asbestos laying all over the place" and was regularly cleaned up with brooms by everyone working at the plant. We cannot conclude the District Court abused its discretion by determining that BN's reference had not opened the door to a discussion of the co-workers' illnesses and claims. It was not improper for BN to attack the credibility of Wang and Fuller's testimony by pointing out inconsistencies with each other, and the contradictory test results. See M. R. Evid. 401 (Relevant evidence includes evidence "bearing upon the credibility of a witness....").
*677 Exclusion of Mr. Funk as a witness.
¶ 20 In discovery, Daley identified Richard Funk, another of his former ***319 co-workers, as a potential witness. However, Daley did not list Funk as a witness on the final pretrial order. Shortly before trial, one of Daley's experts suffered a medical emergency, and the trial was postponed. When the parties submitted a second final pretrial order before the rescheduled trial, Daley added Funk as a witness. BN objected, arguing Funk had not been listed in the initial pretrial order, and that, in discovery, Daley had not provided contact information for Funk, leaving BN unable to contact Funk about his testimony. The District Court barred both parties from adding witnesses to the first pretrial order and disallowed Funk's testimony, reasoning that both parties indicated they were ready for trial when the first pretrial order was filed, and it would not permit a party to "tak[e] advantage" of the continuance granted for a medical emergency.
¶ 21 Daley argues the District Court erred by accepting BN's "misrepresentations about surprise and concealment," and that it was "hyper technical" to exclude Funk, given that BN had notice that he was a witness and his contact information was available in the local phonebook. Daley relies on Tripp v. Jeld-Wen, Inc. , 2005 MT 121, 327 Mont. 146, 112 P.3d 1018 and Ostermiller v. Alvord , 222 Mont. 208, 720 P.2d 1198 (1986), but both cases are distinguishable, as neither involved an emergency trial continuance. The trial judge "is in the best position to determine both whether the party in question has disregarded the opponent's rights, and which sanctions are most appropriate," Spotted Horse , ¶ 15, and we cannot conclude that the District Court acted arbitrarily or exceeded the bounds of reason by disallowing witnesses not disclosed on the first pretrial order.[2]
¶ 22 2. Was Daley denied a fair trial due to BN's trial misconduct?
¶ 23 Daley raises several instances of asserted trial misconduct by BN's Counsel, adding that the other issues raised in this appeal are further evidence of BN's misconduct. After trial, Daley moved for entry of a ***320 default judgment against BN, or in the alternative, a new trial, based on the misconduct allegations, which the District Court denied. Citing the misconduct cases of Anderson v. BNSF Ry. , 2015 MT 240, 380 Mont. 319, 354 P.3d 1248 and Cooper v. Hanson , 2010 MT 113, 356 Mont. 309, 234 P.3d 59, Daley argues the District Court's denial was error.
¶ 24 In Anderson , we reversed a jury verdict in favor of BN and remanded for a new trial, citing misconduct by BN's defense counsel. Anderson , ¶ 81. During closing argument, BN's counsel asserted that the plaintiff's coworkers, lawyers, and medical doctors engaged in what we described as a "conspiracy to bring bogus claims." Anderson , ¶ 74. We noted that BN had offered no evidence of such a conspiracy, and called the argument "baseless innuendo." Anderson , ¶ 76. BN's counsel also made repeated references to Plaintiff's collateral financial resources, including retirement received from BN. Anderson , ¶ 75. Despite several contemporaneous objections and motions in limine by Plaintiff, the District Court offered no curative instructions. Anderson , ¶ 76. We determined that BN's "consistent tactic to characterize Anderson's case as little more than an attempt to get rich off of non-existent injures with the aid of unscrupulous attorneys, dishonest coworkers, and mercenary doctors" was "inflammatory and wholly inappropriate" and "undermined the truth-finding function of the jury." Anderson , ¶ 79. Daley analogizes his assignments of misconduct here to those we condemned in Anderson .
*678 ¶ 25 In Cooper , we reversed a defense verdict and granted a new trial in a medical malpractice case. Cooper , ¶ 43. During voir dire , a potential juror stated that finding a medical doctor had committed negligence was "like a life sentence." Cooper , ¶ 6. During closing argument, defense counsel made several improper statements, including that a verdict for Plaintiff would place a "black mark" on the doctor's reputation. Cooper , ¶ 18. We concluded that the comment in voir dire , combined with the "black mark" comment in closing and confusion among jurors about the standard of proof, materially prejudiced the plaintiff. Cooper , ¶ 37.
¶ 26 Daley raises the following assertions of misconduct.
Daley's Return to the CARD Medical Clinic.
¶ 27 Daley was treated by several physicians at the CARD Clinic, some of whom testified at trial. Daley admitted at his deposition, and his medical records also indicated, that after a six-year hiatus, he returned to the CARD Clinic for further evaluation at the suggestion of his attorneys. Upon Daley's request, the District Court excluded this ***321 evidence, and instructed that BN was not permitted to suggest that Daley returned to the clinic at the recommendation of his attorneys.
¶ 28 However, Daley's Counsel, after obtaining leave to use leading questions during Daley's direct examination, asked questions indicating Daley had returned to the Clinic in response to a decline in physical health. In response, BN, outside the presence of the jury, sought leave to impeach this testimony, and the District Court permitted BN to establish on cross-examination that Daley had previously stated he returned to the Clinic at the recommendation of his attorneys.
¶ 29 Daley argues BN's conduct suggested that Daley's Counsel procured untrue testimony from Daley, and compares this to the "scheme" we condemned in Anderson . However, we conclude this was not misconduct, particularly in view of BN obtaining leave from the District Court before pursuing this line of questioning. Further, it was not improper for the District Court to exercise its broad discretion and allow BN to rebut an impression contradicted by clear evidence. See Guill , ¶ 39.
Personalization of Mr. Liukonen.
¶ 30 BN called Larry Liukonen, an industrial hygiene consultant, as an expert witness. Liukonen worked for BN from 1979 to 1987 as an industrial hygienist and had tested the Somers plant. The following exchange took place during BN's direct examination of Liukonen:
Q: Okay. These people that you had responsibility for back then, that you might have met anywhere, that you were visiting or maybe back at your home office, these were people that you knew and cared about?
A: Oh, absolutely. You know, you go to a place several times, some of these guys become your friends.
Q: Okay. Would you ever knowingly allow somebody to work in a situation that was compromising their health?
A: No, not anyone.
Q: And-what would it mean to you if somebody was accusing you of doing just that?
To this last question, Daley's Counsel objected on relevance grounds, which the District Court sustained. Then, during closing argument, BN's counsel stated:
This is a case about blaming and assessing fault. Folks, Mr. Liukonen and people like him are the ones that are having the finger pointed at them. If you're Larry Liukonen, and it's your responsibility for safety in a workplace, for good industrial hygiene practices in the workplace, this case is about you. If you're ***322 someone like Mr. Liukonen, you don't go into this profession of industrial hygiene and safety because you don't care about people. That's why you go into a profession like this, because you want to help folks, you want to protect folks, you want to look out for folks, folks that you care about. You heard Mr. Liukonen talk about how he would go around these different places and get to know these people. These people would become his friends. Of course he wants to do the *679 right thing for them. And of course, it would tear him apart for somebody to be telling him that he is at fault for causing somebody's terminal illness. And he deserves better than that, folks.
Daley's counsel objected to this argument as improper, which the District Court also sustained.
¶ 31 On appeal, Daley contends BN's argument improperly appealed to the jury's passion and prejudice, analogous to the improper reputation arguments made in Cooper . Daley correctly posits that BN's comments here were improper, meant to arouse the jury's sympathy for Liukonen, for the Defense position, without proper regard to the facts and the law. BN's argument regarding Liukonen was clearly improper and we do not condone it. However, on appeal, "[w]e consider alleged improper statements during closing argument in the context of the entire argument," Anderson, ¶ 75 (citations omitted), and doing so here does not persuade us that the statements were "simply too prejudicial for us to retain confidence that the jury's verdict was based on the evidence and not prejudice." Anderson , ¶ 80. Unlike Anderson , BN's comment here did not pervade its closing argument such that "the acid of improper argument [ate] away at the evidence," Anderson , ¶ 80, nor was it coupled with other concerns upon which we relied in Cooper .
Remarks About Medical Experts.
¶ 32 BN attempted to attack the credibility of Daley's medical experts, including Dr. Spear and Dr. Whitehouse, by noting that Daley's Counsel had worked "hundreds" of cases with them, and played golf with Dr. Whitehouse.[3] BN also disputed the doctors' medical testimony, ***323 and offered that "every doctor that hasn't been hired by [Daley's] attorneys says he doesn't have an asbestos-related disease." Daley argues these comments constituted another baseless assertion by BN of a bogus "scheme," similar to Anderson , and that the District Court erred by denying his request, in response to BN's statements, to introduce evidence about the prior cases on which his counsel and expert witness had worked.
¶ 33 However, trial courts may permit a party to elicit facts relevant to the credibility and potential bias of an expert witness. See M. R. Evid. 401. The conduct here does not constitute the actions condemned in Anderson , and we cannot conclude that the District Court's determination, in managing the trial, to prohibit an inquiry into the cases previously worked by Daley's Counsel and expert witness was an abuse of discretion.[4]
¶ 34 3. Was Daley denied a fair trial due to BN's discovery misconduct?
¶ 35 Daley propounded discovery to identify other injuries to BN employees. One interrogatory, for instance, requested that BN "identify all claims filed against your company by employees who worked around asbestos" from 1962 to the present. In December 2015, BN responded to this interrogatory and other similar requests by objecting that the requests were overly broad and unduly burdensome, stating the requests spanned fifty years and covered all locations, crafts, facilities, and types of injuries. However, along with its objections, BN offered to conduct a search and produce information about prior employee exposure to asbestos, under parameters stated as follows:
Subject to and without waiving the foregoing objections, [BN] proposes the following search:
Date Range: 1/1/69 through 11/30/2015 *680 Location: Montana
Craft: TY&E
Occupational exposure illness code subset.
Names and other identifying information will be redacted to protect employee privacy rights. If Plaintiff agrees, said search will be run.
Apparently, Daley did not respond to BN's proposed search prior to the ***324 close of discovery. In June 2016, BN similarly objected to Daley's further discovery requests that sought information regarding other accidents, and discovery closed in July 2016. The motions deadlines passed and, in September 2016, Daley certified at a pretrial conference he was ready for trial and did not mention any discovery disputes. Daley made an emergency motion to continue trial, due to a medical emergency of one of his experts, which the District Court granted. Trial was reset for July 2017.
¶ 36 Then, in March 2017, Daley filed a motion to compel, arguing BN had made improper objections to his discovery requests and withheld documents of other claims, and asserting "it is clear that [BN] has not produced responsive information that Plaintiff has located on his own and that [BN] is well aware of from asbestos litigation against it." Citing M. R. Civ. P. 37(a)(1), which requires a good faith conferral before moving to compel discovery, BN responded that the motion was filed without a meaningful conferral, as Daley had raised the issue with BN only four days before filing his motion. BN also argued the requests were overbroad, and explained that it had offered in 2015 to conduct a search within proposed parameters for other claims, but that Daley had not responded. BN included a spreadsheet providing raw data about BN injury claims in Montana that would have been used for the proposed search.
¶ 37 The District Court denied Daley's motion in a six-page, single-spaced order. The District Court ruled Daley's motion was untimely. The court did not want the parties to use the emergency trial continuance to conduct additional discovery, and set a new motion deadline only because the first final pretrial order referenced unbriefed trial issues that needed to be resolved. Daley's discovery motion was filed more than eight months after the close of discovery and over a year after receiving BN's initial objections.[5] The District Court found that "Daley's counsel should have recognized his concerns regarding [BN]'s objections" before discovery closed, and that Daley's explanation for his delay-that he was unaware of other claims against BN until recently-was "not compelling" and "not persuasive." The District Court conducted an eight-factor balancing test used by the Ninth Circuit, see ***325 Days Inn Worldwide, Inc. v. Sonia Invs. , 237 F.R.D. 395, 398 (N.D. Tex. 2006), to determine if a motion to compel filed after the discovery deadline should be denied for untimeliness; all eight factors weighed against Daley.
¶ 38 Further, the District Court found Daley did not comply with the good faith conferral requirement under M. R. Civ. P. 37(a)(1). Based on the timing of the motion, giving BN only four days to respond before filing, the District Court concluded the motion "smack[ed] of gamesmanship." The District Court found that Daley's assertions about the existence of withheld documents were "based fundamentally on assumptions and speculation," and that many of Daley's discovery requests were "overbroad and burdensome requests which do not appear reasonably calculated to lead to the discovery of admissible evidence." Finally, the District Court granted BN's attorney fees for defending against the motion under M. R. Civ. P. 37(a)(5)(B), which it reasoned was mandatory under the Rule, absent certain exceptions.
¶ 39 On appeal, Daley argues the District Court abused its discretion by not granting its motion to compel, and should have entered a default against BN for this "discovery misconduct," as BN failed to produce sufficient information in response to his requests. However, we cannot conclude, under the District Court's extensive reasoning, *681 that it acted arbitrarily or exceeded the bounds of reason. We have expressed an "intolerance of discovery abuses." Spotted Horse , ¶ 21 (citations omitted). However, broad discovery requests by a plaintiff and broad discovery objections by a defendant may be anticipated, and a party who believes he is aggrieved by discovery abuse must diligently follow the Rules to pursue relief. We have previously recognized the "dim view" taken by courts to inaction or dilatory responses to asserted inadequate discovery answers. In re Estate of Harmon , ¶ 53. An aggrieved party must confer and compel in a timely fashion under the court's scheduling order. Daley filed the motion well over a year after BN first lodged its objections, having failed to pursue the issue until well after discovery had closed and shortly before the second trial date. We do not believe entry of a default judgment against BN is warranted.
¶ 40 Daley briefly mentions, within his discovery argument, that it was error for the District Court to award BN's fees, though a legal analysis or argument is not provided on the specific issue of fees. Thus, it is questionable whether the fee award is a separately supported issue on appeal. See Johnston v. Palmer , 2007 MT 99, ¶ 30, 337 Mont. 101, 158 P.3d 998 (This Court will not conduct legal research on behalf of a party, speculate at a party's precise position, or to develop legal analysis that may lend support to that position). Assuming, however, the issue is properly presented, if legal authority exists to award ***326 attorneys' fees, we review a district court's grant or denial of fees for abuse of discretion. City of Missoula v. Mt. Water Co. , 2018 MT 139, ¶ 9, 391 Mont. 422, 419 P.3d 685 (citations omitted). Authority for the fees is found in M. R. Civ. P. 37(a)(5)(B), which provides that if a motion to compel is denied, the district court
must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.
The language of the rule, nearly identical to its Federal counterpart, which mandates attorneys' fees absent an additional showing of substantial justification or unjustness, creates a rebuttable presumption that fees will be awarded to a party that prevails on a motion to compel. See 2 James WM. Moore, Moore's Manual: Federal Practice and Procedure § 15.41 (Matthew Bender ed. 2017). The burden to rebut the presumption falls on the party being sanctioned. Moore, supra , at § 15.41. The District Court determined that the motion was untimely, and significantly so, that Daley's reasons for the untimely filing were not compelling, and that the motion had not been made in good faith. Given these findings, we cannot conclude the District Court abused its discretion by holding that an exception to a fee award had not been established. Daley's significant delay required the parties and the court to engage on a discovery issue shortly before trial that should have been long resolved.[6]
¶ 41 Lastly, Daley argues BN's tactics and patterns of conduct constitute cumulative misconduct that warrant either the entry of a default judgment against BN or a new trial. Having analyzed the issues individually, we conclude that they do not collectively require the requested relief against BN.
***327 ¶ 42 Affirmed.
We concur:
LAURIE McKINNON, J.
BETH BAKER, J.
INGRID GUSTAFSON, J.

Daley also cites his trial argument for admission of witness testimony regarding BN's OSHA compliance, but he did not argue at that time the door had been opened for admission of the letters by BN's opening statement.

On another evidentiary issue, the District Court excluded evidence of creosote exposure, stating only in its written order that it "incorporates the rationale it gave when granting this motion at the May ... oral argument." The District Court also excluded reference to the Somers plant's related designation as a federal superfund site for creosote contamination, again citing its earlier ruling excluding evidence of creosote exposure. However, the transcript of the hearing wherein the court gave its oral ruling has not been provided, and the minute entry of the hearing is insufficient for us to determine the court's rationale, leaving us unable to properly review the issue. "Failure to present the court with a sufficient record on appeal may result in ... affirmance of the district court on the basis the appellant has presented an insufficient record." M. R. App. P. 8(2).

BN's attorney asked Dr. Whitehouse on cross, "And you got a little sore at me because I took too long [at your deposition] and ruined your golf match with [Daley's counsel], didn't I?" In response to counsel's following question, "You're not still sore at me, are you?", Whitehouse answered, "Yes, I am ... If you want to call me biased, you can." While a relationship between plaintiff's counsel and an expert may be relevant to the expert's potential bias, we would hope that professionalism would prevail among professionals during trial, and communication would not degenerate into anger and sarcasm that demean the legal process before the citizens of the jury.

Daley also briefly contends that BN's trial assertion that the testimony of Daley's co-workers, Wang and Fuller, was inconsistent constituted misconduct similar to BN's tactics in Anderson . However, inconsistencies within testimony are an appropriate consideration, see M. R. Evid. 401, and BN's action here did not rise to the misconduct found in Anderson .

In context, the lawsuit was filed in 2004, and the case sat dormant for years. In 2015, Daley filed an amended complaint after the District Court issued an order to show cause why the case should not be dismissed. Thus, Daley had significant time for case development.

Daley briefly argues that jury instructions 37 and 38 improperly stated BN's duty under FELA. Daley offers little analysis and authority on this issue. FELA claims involve a specialized area of the law with unique standards of care. Anderson , ¶ 17. This Court will not conduct legal research on behalf of a party, speculate at a party's precise position, or to develop legal analysis that may lend support to that position. Johnston , ¶ 30 (collecting cases). The Appellant bears the burden of establishing error. State v. Gomez , 2007 MT 111, ¶ 33, 337 Mont. 219, 158 P.3d 442 (citations omitted). We conclude Daley has not carried his burden of establishing error on the part of the District Court, and resulting prejudice from the jury instructions.