FILED

06/30/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0664

DA 19-0664

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 167

NANCY NOLAN and THOMAS GARRITY,

     Plaintiffs and Appellants,

  v.

BILLINGS CLINIC, a Montana Corporation,

     Defendant and Appellee.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                In and For the County of Yellowstone, Cause No. DV 16-1355
                Honorable Olivia C. Rieger, Presiding Judge

COUNSEL OF RECORD:

     For Appellants:

          Sean E. Johnson, Johnson Law Firm, P.C., Spokane, Washington

          Chad H. Freebourn, Roberts|Freebourn, PLLC, Spokane, Washington

     For Appellee:

          Lisa A. Speare, William J. Speare, Speare Law Firm, PC, Billings, Montana

          Jon Moyers, Moyers Law, P.C., Billings, Montana

                      Submitted on Briefs: April 29, 2020

                              Decided: June 30, 2020

Filed:

                    _____
                            Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Plaintiffs Nancy Nolan and Thomas Garrity appeal a jury verdict in favor of the Billings Clinic on their negligence claim after Nolan slipped and fell on snow and ice near the Clinic's entrance.  Plaintiffs assert that the District Court erred when it: (1) did not impose meaningful sanctions on the Clinic for its failure to preserve video evidence; (2) admitted a weather report through Garrity, Nolan's husband, who had no personal knowledge of the report; (3) refused to allow Plaintiffs to introduce evidence of other falls on the Clinic's premises on the same day, or within one day, of Nolan's fall; and (4) refused to give Plaintiffs' proposed jury instruction on a Billings municipal ordinance regarding snow removal without evidence that the Clinic received a citation for violating the Municipal Code.  Finding no abuse of discretion, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     Nolan had an appointment at the Clinic the morning of February 28, 2014, during a snowstorm in Billings.  Nolan and Garrity arrived early and parked in the parking lot.  At approximately 7:40 a.m., as she walked on a sidewalk into the Clinic, Nolan slipped and fell prior to reaching the covered drop-off area to the south atrium entrance.  She fractured her hip in the accident.  The accident report indicated that she fell in snow and ice conditions.  The case went to trial before a Yellowstone County jury, which found the Clinic not negligent and did not answer the remaining questions on the verdict form.

## STANDARD OF REVIEW

¶3     All issues Plaintiffs raise are reviewed for an abuse of discretion.  *Spotted Horse v. BNSF Ry. Co.*, 2015 MT 148, ¶ 15, 379 Mont. 314, 350 P.3d 52 (explaining district courts

2

have broad discretion when imposing discovery sanctions); *Daley v. BNSF Ry. Co.*, 2018 MT 197, ¶ 3, 392 Mont. 311, 425 P.3d 669 ("The district court has broad discretion in determining the admissibility of evidence."); *Peterson v. St. Paul Fire & Marine Ins. Co.*, 2010 MT 187, ¶ 22, 357 Mont. 293, 239 P.3d 904 (explaining a district court has broad discretion to formulate jury instructions, "limited by the overriding principle that jury instructions must fully and fairly instruct the jury regarding the applicable law"). An abuse of discretion occurs when the trial court acts arbitrarily and without the employment of conscientious judgment or exceeds the bounds of reason, in view of all the circumstances. *Spotted Horse*, ¶ 15.

## DISCUSSION

¶4　　*1. Did the District Court err when it did not impose more sanctions on Billings Clinic for evidence spoliation?*

¶5　　The Clinic has a video camera inside the south atrium entrance, but it did not record the accident or the area where Nolan fell. It records the area inside the entrance and captures the outside area underneath the large covered entrance. A still image of the footage from the camera showing Plaintiffs entering the Clinic shortly after Nolan's accident was preserved as part of the report of the accident, but the video recording was recorded over after 72 hours and was not preserved.

¶6　　Plaintiffs assert that they were severely prejudiced by the absence of the complete video of the south atrium entrance. Had the video been preserved, they posit, "a wealth of information could have been captured." They asked the District Court to sanction the Clinic for failing to preserve the evidence by entering a default judgment or, alternatively,

3

an order finding that at the time of the accident there was ice and snow on the sidewalk where the accident occurred. The court, agreeing that the Clinic—a sophisticated litigant—breached its duty to preserve evidence, ordered the Clinic to pay to reconduct a deposition of its designated M. R. Civ. P. 30(b)(6) witness at which Plaintiffs could question the witness about the video surveillance at the time of Nolan's fall.[1] Plaintiffs argue that the second deposition of the witness was independently necessary and imposed as a result of defense counsel's disruption of the first deposition. They argue that the District Court abused its discretion when it failed to impose an independent, meaningful sanction against the Clinic after making a finding that the Clinic breached its duty to preserve relevant video evidence. They ask this Court to reverse the jury's verdict and remand to the District Court for a new trial with instruction to fashion a sanction that "will satisfy the remedial and deterrent goals of sanctions for spoliation of evidence." *Spotted Horse*, ¶ 39.

¶7 The Clinic asserts that Plaintiffs sought extreme sanctions via default judgment or jury instructions asserting facts that had not been established and that the missing video would not have established. The Clinic argues that the District Court's sanction was appropriate because: the court required the Clinic to pay for Plaintiffs to re-depose the Rule 30(b)(6) witness regarding several matters, including the video; Plaintiffs were allowed to question a Clinic witness at trial regarding the fact that there had been a videotape, the video was in the Clinic's control, and it no longer existed; and the

---

[1] The court separately found that defense counsel intentionally interfered with Plaintiffs' ability to conduct fact-finding via deposition of the Rule 30(b)(6) witness and granted Plaintiffs the ability to conduct an additional deposition of the witness.

4

District Court instructed the jury that if weaker or less satisfactory evidence was offered, the evidence offered should be viewed with distrust in light of the offering party's ability to offer stronger or more satisfactory evidence.

¶8      When reviewing imposition of sanctions, "we generally defer to the district court because it is in the best position to determine both whether the party in question has disregarded the opponent's rights, and which sanctions are most appropriate." *Spotted Horse*, ¶ 15 (citing *Richardson v. State of Montana*, 2006 MT 43, ¶ 21, 331 Mont. 231, 130 P.3d 634). District courts are "well equipped under the Montana Rules of Civil Procedure to address the problem [of spoliation of evidence] as it occurs and deal with it accordingly." *Spotted Horse*, ¶ 20 (citing *Oliver v. Stimson Lumber Co.*, 1999 MT 328, ¶ 32, 297 Mont. 336, 993 P.2d 11). "[A]ny sanction imposed must be proportionate to the prejudice caused by the absence of the evidence." *MSU-Bozeman v. Mont. First Judicial Dist. Court*, 2018 MT 220, ¶ 32, 392 Mont. 458, 426 P.3d 541.

¶9      The District Court addressed the issue of sanctions for failure to preserve video evidence in a manner well within its discretion. It rejected Plaintiffs' argument that the Clinic was sanctioned only for issues surrounding a failed deposition and explained that its imposition of costs on the Clinic for the second deposition was "the sanction intended for the lack of preservation of the video surveillance." The court also allowed Plaintiffs to make the jury aware that there had been a videotape that no longer existed and instructed the jury that it could view the weaker evidence—the still image from the video footage—with distrust. The District Court did not abuse its discretion when it did not impose further sanctions on the Clinic.

5

¶10    *2. Did the District Court err when it admitted the weather report into evidence?*

¶11    During trial, the District Court admitted over Plaintiffs' objection a certified copy of the U.S. Department of Commerce's February 2014 Billings weather record. The record showed measurable precipitation beginning the evening of February 27, continuing through the evening of February 28. At trial, the Clinic questioned Garrity, utilizing the weather report, regarding the weather and amount of snowfall recorded that day.

¶12    Plaintiffs assert that the District Court erred by admitting the weather report into evidence without proper foundation and erred further by allowing the Clinic to cross-examine Garrity on the substance of the report when he had no personal knowledge of it. They argue that the Clinic did not lay a foundation showing that Garrity had any special training, education, or experience in weather that qualified him to testify to the contents of the weather report. They assert further that the weather report was hearsay, as were its contents.

¶13    Plaintiffs urge that the fact a document may be self-authenticating does not relieve the requirement to lay the necessary foundation for the contents of the document itself and to ensure that the requisite hearsay exception has been met. They claim that whether a document is self-authenticating is irrelevant to whether it may be used with a witness who has no personal knowledge of the contents. Plaintiffs conclude that the Clinic essentially was allowed to use Garrity as an unqualified expert to testify to measurements of snowfall, snow accumulation, and overall precipitation even though he was not qualified as an expert.

¶14    M. R. Evid. 902 provides that extrinsic evidence of authenticity is not a condition precedent for the admissibility of a document bearing a seal of a government department.

6

*See City of Billings v. Lindell*, 236 Mont. 519, 521, 771 P.2d 134, 136 (1989). The weather report at issue satisfied M. R. Evid. 902(4) requirements because it was certified by the custodian of the public records: the Data Administrator for the National Centers for Environmental Information, an organization within the U.S. Department of Commerce. The report also satisfied the public records hearsay exception under M. R. Evid. 803(8). Both Rules 902 and 803 are methods through which authenticity is taken as established for purposes of admissibility—Rule 902 is the mechanism by which self-authenticating documents satisfy evidentiary foundation rules and M. R. Evid. 803(8) is the mechanism by which public records may fit within a hearsay exception. *See City of Kalispell v. Omyer*, 2016 MT 63, ¶ 22, 383 Mont. 19, 368 P.3d 1165. Garrity was not testifying as an expert about the amount of snowfall; as a self-authenticating document, the report gave that information and did not need further foundation.

¶15   Plaintiffs assert that Garrity did not have personal knowledge of the weather report and could not testify to its contents pursuant to M. R. Evid. 602. Having him read the weather report into the record thus was improper. But the Clinic was not utilizing Garrity as a witness to establish the admissibility of a document that was already admissible, and he was not asked to testify to any information not apparent from the document. The Clinic used the report to question him on his knowledge of the weather conditions on the date in question. The District Court did not abuse its discretion by admitting the weather report.

¶16    *3. Did the District Court err when it did not allow Plaintiffs to introduce evidence of other falls on the Clinic campus?*

¶17    Plaintiffs assert that the District Court erred when it did not admit evidence of six of seven other falls that occurred on the same day or the day before Nolan's fall. The court reasoned that the other falls were not similar to Nolan's, as they occurred in parking lots rather than on sidewalks or at sister facilities not on the main hospital campus. Plaintiffs assert that the other falls were relevant and similar to Nolan's fall because minor factual distinctions do not raise a "substantial dissimilarity." *Kissock v. Butte Convalescent Ctr.*, 1999 MT 322, ¶ 21, 297 Mont. 307, 992 P.2d 1271. The Clinic points out that the court did allow Plaintiffs to introduce evidence of another similar accident on a sidewalk at the Clinic on the same day as Nolan's accident. The Clinic argues that the court appropriately excluded the others.

¶18    A district court has broad discretion to determine whether evidence is relevant and admissible. *Kissock*, ¶ 10 (citation omitted). Evidence of other falls is not admissible to prove negligence. *Richardson*, ¶ 26 (citing *Kissock*, ¶ 15). The evidence is admissible to show the existence of danger, defect, or knowledge. *Richardson*, ¶ 26 (citing *Kissock*, ¶ 15). The prior accident must be "substantially similar to" and "not too remote from the accident in question" to qualify for admission. *Kissock*, ¶ 15.

¶19    In *Kissock*, we reversed a district court's decision disallowing evidence of a slip-and-fall accident that occurred a few days prior to the plaintiff's accident in the same parking lot. *Kissock*, ¶¶ 21-24. We concluded that the jury should have been able to hear evidence of the prior accident—even if it was days apart and in a different location—for

8

the purpose of determining whether a reasonably prudent defendant, having notice of a prior accident, might have taken precautions against future accidents. *Kissock*, ¶ 22.

¶20 Here, Plaintiffs presented the evidence of the other falls in order to refute the Clinic's defense that it had a "very good and competent team" that conducted snow removal and that the Clinic followed and exceeded the requirements of the snow removal policy "many, many times." Counsel for Plaintiffs told the District Court that the evidence of other accidents "establishes that the policy is not working." Essentially, Plaintiffs attempted to use the other accidents to show that the Clinic was not meeting its duty of care—an improper purpose. *Richardson*, ¶ 26. The Clinic did not assert that it was unaware of the accumulating snow that day or claim that slippery sidewalks were not dangerous to its patients or visitors. Because Plaintiffs did not introduce the evidence to prove notice of the condition or the existence of a danger, as in *Kissock*, the court was well within its discretion to deny its admission.

¶21 *4. Did the District Court err when it did not instruct the jury on the Billings municipal ordinance regarding snow removal?*

¶22 Plaintiffs lastly allege that the District Court erred when it refused to give their proposed jury instruction on a Billings municipal ordinance requiring property owners to remove snow from a premises' sidewalks within twenty-four hours of snowfall. Plaintiffs assert that the ordinance set forth a duty with regard to snow removal in the City of Billings that applies to the Clinic. They requested the District Court to instruct the jury that if it found the Clinic had violated the ordinance, the Clinic was negligent per se.

9

¶23 The District Court found the ordinance inapplicable to establish negligence per se. It allowed Plaintiffs to offer evidence that there was an ordinance relating to removal of snow from walkways such as those at the Clinic but refused to admit "conclusory evidence" that the Clinic violated the ordinance unless there was proof of a violation, such as adjudication through a competent court.

¶24 The District Court has broad discretion to formulate jury instructions. It explained its reasoning for rejecting the proposed instruction, which would have allowed the jury to find that the Clinic was negligent per se if the jury found it violated the ordinance. As the Clinic points out, however, the snowstorm was in progress when Nolan came to the Clinic, and there was no evidence the Clinic violated the ordinance. The District Court did not abuse its discretion by declining to give the requested jury instruction. The jury instructions given were a full and fair statement of the law.

## CONCLUSION

¶25 The District Court did not abuse its discretion when it: (1) did not impose further sanctions on Billings Clinic for its failure to preserve video evidence; (2) admitted a weather report; (3) did not allow Plaintiffs to introduce evidence of other falls; and (4) refused to give Plaintiffs' proposed jury instruction on a Billings municipal ordinance regarding snow removal.

¶26 The court's judgment on the verdict is affirmed.

/S/ BETH BAKER

10

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE