FILED

02/20/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0600

DA 22-0600

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 34N

SALVATRICE MUSCLE,

 Plaintiff and Appellant,

  v.

ANTONIO SANTIN, M.D.,

 Defendant and Appellee.

APPEAL FROM: District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADV-17-728
Honorable David J. Grubich, Presiding Judge

COUNSEL OF RECORD:

 For Appellant:

  Allen P. Lanning, Law Office of Allen P. Lanning, PC, Great Falls, Montana

 For Appellee:

  Gary Kalkstein, Joe Newman, Hall Booth Smith, P.C., Missoula, Montana

Submitted on Briefs: January 3, 2024

Decided: February 20, 2024

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Salvatrice Muscle filed this medical malpractice action against Antonio Santin, M.D., alleging negligence in his cosmetic surgical treatment for Muscle's significant weight loss. Muscle appeals the Montana Eighth Judicial District Court's judgment on a Cascade County defense jury verdict and the court's order foreclosing part of her claims against Santin. We affirm.

¶3 After Muscle lost a significant amount of weight, she consulted with Santin in March 2015 regarding cosmetic surgical options to remove excess skin. Santin advised Muscle that she could undergo two procedures: bilateral medial thighplasty to remove excess skin on her thighs and abdominoplasty to remove excess skin on her mid-section. At that time, neither Muscle nor Santin noted any concerns with excess skin on Muscle's buttocks or discussed any plastic surgery options for Muscle's buttocks. Muscle agreed to undergo the bilateral medial thighplasty, and Santin performed the procedure in April 2015.

¶4 Following the bilateral medial thighplasty surgery, Muscle expressed concerns in follow-up appointments with Santin about her residual buttocks skin.[1] Santin's note from

---

[1] Muscle's brief uses the term "buttock ptosis," and Santin's brief uses the term "buttock laxity" to describe this condition.

2

Muscle's June 3, 2015 appointment stated that he "d[id] not see any easy solutions" for Muscle's residual buttocks skin. His note from Muscle's June 17, 2015 appointment said, "I stated that I do not know if it can be 'fixed' since it is the bottom-most aspect of her buttocks, which hangs asymmetrically for the entire buttocks. Nevertheless, there is swelling that will continue to improve. At this point, she started to inconsolably cry . . . . Her reaction is out of proportion and it is impossible to discuss the issues with her at this point." Muscle contends that during the June 17 appointment Santin told her that neither he nor anyone else could fix her residual buttocks skin and she would have to live with it and that he assailed her emotional response as being unwarranted.

¶5 After leaving the appointment, Muscle decided to obtain a second opinion from Dr. Emilia Ploplys. Muscle had an initial consultation with Dr. Ploplys on August 24, 2015. Dr. Ploplys later performed multiple procedures on Muscle, including a posterior thigh lift[2] to resolve the residual buttocks skin.

¶6 Muscle filed suit against Santin in November 2017, alleging that Santin negligently performed the thighplasty instead of first proceeding with a lower body lift. Because of Santin's failure to diagnose and sequence the surgery appropriately, Muscle alleged, she had painful scar tissue and disfigurement. Muscle obtained an expert, Dr. Scott Sattler, who opined in expert disclosure that Santin breached the professional standard of care in failing to address Muscle's buttocks ptosis and in failing to properly sequence the surgeries necessary to give Muscle her desired result.

---

[2] Both parties use the term "lower body lift" to describe this procedure.

¶7 Santin moved for summary judgment, claiming, in relevant part, that Muscle failed to establish from Dr. Sattler's testimony that Santin departed from the standard of care and that departure more likely than not caused Muscle's injury. The District Court granted the motion in part and denied it in part. The court found a genuine issue of material fact regarding Santin's failure to diagnose Muscle's buttocks ptosis. It granted summary judgment on the thighplasty and sequencing allegations, finding no genuine issues of material fact whether Santin's choice to perform the medial thighplasty or his sequencing of procedures departed from the standard of care.

¶8 At trial, Santin's counsel asked Dr. Sattler about stock images on his website that did not disclose that the people in the photos were not his patients. Santin's counsel also asked Dr. Sattler about whether publishing such images ran afoul of the American Society of Plastic Surgeons (ASPS) Code of Ethics advertising rules regarding stock images. When Santin's counsel pressed Dr. Sattler for an answer on whether he included a disclaimer in recognition of the ethical rule, Muscle's counsel objected. The court overruled the objection. Muscle further objected to the admission through Dr. Sattler of Santin's Exhibit 505—the ASPS Code of Ethics advertising rules—which the District Court sustained. Later, defense expert witness Dr. Robert Grant testified to the ASPS Code of Ethics advertising rules. During Dr. Grant's testimony, the court admitted Exhibit 505 over Muscle's objection.

¶9 After the jury returned a verdict finding that Santin was not negligent, Muscle moved for a new trial under § 25-11-102(1), (7), MCA. Muscle argued that testimony

4

regarding Dr. Sattler's use of stock photos on his website and evidence of the ASPS Code of Ethics advertising rules were not properly admitted under the Rules of Evidence. The court denied Muscle's motion. Muscle appeals the District Court's award of summary judgment to Santin regarding the medial thighplasty and sequencing issues and its denial of her motion for a new trial.

¶10 We review a district court's summary judgment ruling de novo, applying the standards of M. R. Civ. P. 56. *Howlett v. Chiropractic Ctr., P.C.*, 2020 MT 74, ¶ 14, 399 Mont. 401, 460 P.3d 942 (citation omitted). Evidentiary determinations underlying a summary judgment decision, however, are reviewed for an abuse of discretion, with the understanding that the district court has broad discretion in determining the admissibility of evidence. *Howlett*, ¶ 15 (citing *Daley v. BNSF Ry.*, 2018 MT 197, ¶ 3, 392 Mont. 311, 425 P.3d 669). If an appellant demonstrates a district court abused its discretion in rendering an evidentiary ruling, we then determine whether the abuse constitutes reversible error. *Howlett*, ¶ 15 (citing *Seltzer v. Morton*, 2007 MT 62, ¶ 65, 336 Mont. 225, 154 P.3d 561). Reversible error occurs only when "a substantial right of the party is affected." *In re Estate of Edwards*, 2017 MT 93, ¶ 50, 387 Mont. 274, 393 P.3d 639 (quoting *Reese v. Stanton*, 2015 MT 293, ¶ 25, 381 Mont. 241, 358 P.3d 208 (citing M. R. Evid. 103)). "[A] substantial right of a party is not affected unless the challenged evidence is of such character to have affected the result of the case." *Estate of Edwards*, ¶ 50 (internal quotations and citation omitted).

¶11 We review a district court's decision on a motion for a new trial under § 25-11-102(1), (7), MCA, for a manifest abuse of discretion. *Armstrong v. Gondeiro*, 2000 MT 326, ¶ 17, 303 Mont. 37, 15 P.3d 386 (citing *Benson v. Heritage Inn, Inc.*, 1998 MT 330, ¶ 13, 292 Mont. 268, 971 P.2d 1227). "The decision to grant or deny a new trial is within the sound discretion of the trial judge and will not be disturbed absent a showing of manifest abuse of that discretion." *Armstrong*, ¶ 17 (quoting *Baxter v. Archie Cochrane Motors, Inc.*, 271 Mont. 286, 287-88, 895 P.2d 631, 632 (1995)).

¶12 Muscle challenges the District Court's pretrial summary judgment ruling that Santin's sequencing of medical procedures and choice to perform a medial thighplasty were not departures from the standard of care. Muscle alleges that the court erred in interpreting Dr. Sattler's deposition testimony when it determined that, although "[Dr. Sattler] stated multiple times that the appropriate procedure, in both his practice and with other surgeons in his field, is to perform a circumferential lower body lift prior to a medial thighplasty . . . . Dr. Sattler ultimately agreed that the standard of care does not require performing a circumferential lower lift first, prior to a medial thighplasty." Under this Court's precedent in *Kipfinger v. Great Falls Obstetrical & Gynecological Assocs.*, 2023 MT 44, 411 Mont. 269, 525 P.3d 1183, Muscle argues that the court failed to liberally construe Dr. Sattler's deposition testimony and to view it in the light most favorable to the nonmoving party.

¶13 Santin responds that Dr. Sattler expressed a personal preference for sequencing lift procedures before thighplasties but did not opine that Santin's alternative choice in

Muscle's case was a departure from a national standard of care. Accordingly, Santin asserts that the court correctly concluded that Dr. Sattler's opinions were insufficient to prima facie establish the standard-of-care or breach elements of Muscle's sequencing-related claims.

¶14 A plaintiff in a medical malpractice action in Montana must establish the following elements with expert testimony: (1) the applicable standard of care, (2) the defendant departed from the standard of care, and (3) the departure proximately caused the plaintiff's injury. *Howlett*, ¶ 18 (citations omitted). In establishing a departure from the standard of care, the plaintiff also must establish that a physician's conduct breached a national standard of care. *Howlett*, ¶ 18 (citing *Norris v. Fritz*, 2012 MT 27, ¶ 44, 364 Mont. 63, 270 P.3d 79).

¶15 Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Howlett*, ¶ 14 (citing M. R. Civ. P. 56(c)(3)). The initial burden is on the moving party to establish that no genuine issue of material fact exists. *Howlett*, ¶ 14 (citing *Estate of Willson v. Addison*, 2011 MT 179, ¶ 13, 361 Mont. 269, 258 P.3d 410). The burden then shifts to the nonmoving party, who must set forth specific facts demonstrating a genuine issue for trial. *Howlett*, ¶ 14 (citing *Estate of Willson*, ¶ 13).

¶16 In its summary judgment order, the District Court referenced Dr. Sattler's response to Muscle's attorney regarding the standard of care on sequencing:

Q. But the standard of care doesn't require that one [particular procedure] be performed first. You still want to – if you believe that a patient's been informed, has a procedure that you believe is indicated, will improve the quality of their life as information's provided to you by the patient, and they say this is what I would like to do with the understanding I have global ptosis, you're not saying the standard of care requires you to say, no, I'm only going to do this?

A. No. But I think it's my responsibility to tell the patient that their result will be better if they do a circumferential lower body lift prior to a medial thighplasty. That's why we sequence these operation[s] this way.

Later in the deposition, Dr. Sattler stated, "I wouldn't call it an industry standard because clearly not everyone in the industry is doing it this way, but there is plenty of literature to support staging trunk lower body lift procedures prior to operating on the thighs." Our review of Dr. Sattler's deposition leads us to agree that the testimony did not establish a breach of the applicable standard of care for proper sequencing of treatment or that Santin departed from that standard of care. Without expert testimony establishing the standard of care and Santin's breach, Muscle did not meet her burden to establish a genuine issue of material fact that Santin was negligent. We accordingly affirm the District Court's grant of partial summary judgment on this issue.

¶17 Muscle also takes issue with the District Court's admission for impeachment purposes of what she claims was character evidence regarding Dr. Sattler's advertising practices, which materially affected her right to a fair trial. Muscle alleges that under M. R. Evid. 402 and 608, the evidence was irrelevant, impermissible evidence of a specific instance of conduct of a witness for which its probative value was substantially outweighed by the danger of unfair prejudice under Rule 403.

8

¶18 Santin responds that even if admission was error, it must be deemed harmless because Muscle failed to supply a transcript sufficient to facilitate this Court's review for relative prejudice. Santin points to Muscle's request for transcripts on appeal, which requested the following documents: oral argument on Santin's motion for summary judgment; opening statements; Dr. Sattler's testimony; Dr. Grant's testimony; the finalization of exhibits before submission to the jury between court and counsel; and final arguments.[3] Santin contends that Muscle erred in failing to request the trial testimony of herself, Santin, Dr. Ploplys, James Muscle, and Nurse Pollington, and absent that testimony, this Court cannot undertake a relative review for prejudice.

¶19 In reply, Muscle contends that the portions of the transcripts she provided, as well as the documentary record, are sufficient for this Court to rule on appeal. Further, if Santin believed additional records of the proceedings were important to this Court's review, then he should have requested a reconstituted record.

¶20 "Error may not be predicated upon a ruling which admits . . . evidence unless a substantial right of the party is affected[.]" M. R. Evid. 103(a). Because of the deference accorded a jury's verdict, we will not reverse a district court for improperly admitting

---

[3] The transcript submitted by the court reporter on appeal includes only oral arguments on Santin's motion for summary judgment, opening statements of the parties, Dr. Sattler's testimony, and Dr. Grant's testimony. In response to this Court's May 5, 2023 order regarding the briefing schedule on appeal, Muscle's counsel advised that, following retirement of the court reporter, another reporter was transcribing the trial, but "[t]he final day of audio for the trial remains missing/unavailable." It appears, however, that all of the transcripts Muscle designated as necessary for appeal were prepared and submitted by the court reporter, with the exception of the final arguments. Muscle stated in her opening brief only that "[t]he rest of the Trial Transcript is unavailable due to a technical problem." She did not submit anything further under M. R. App. P. 8(7) regarding unavailability of the transcript.

9

evidence unless a party demonstrates substantial prejudice. *See Estate of Edwards*, ¶ 50. Contrary to Muscle's assertion, the appellant—Muscle—has the duty to present this Court with a record sufficient to enable us to rule upon the issues raised. M. R. App. P. 8(2). This duty includes requesting the transcript of proceedings. M. R. App. P. 8(3). Failure to present this Court with a sufficient record on appeal may result in dismissal of the appeal or affirmance of the district court on the basis that appellant has presented an insufficient record. M. R. App. P. 8(2). We presume a trial court's decision is correct, and the appellant bears the burden to establish error. *See State v. Buck,* 2006 MT 81, ¶ 30, 331 Mont. 517, 134 P.3d 53 (citations omitted). Because Muscle did not request or provide this Court with the entire trial record, it is impossible for the Court to determine the complete picture of the evidence presented to review the alleged evidentiary error for substantial prejudice. *See Howlett*, ¶ 30 n.5. *See also Wenger v. State Farm Mut. Auto. Ins. Co.*, 2021 MT 37, ¶ 29, 403 Mont. 210, 483 P.3d 480 (reviewing the trial record to determine whether improper admission of evidence "unfairly could have affected the jury's decision"). We therefore decline to consider this argument further.

¶21    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. The District Court's rulings granting summary judgment on the sequencing-related issues and denying Muscle's motion for a new trial are affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ INGRID GUSTAFSON
/S/ JIM RICE


Justice Laurie McKinnon recused herself and did not participate in this matter.